[No. 2743. Decided November 12, 1897.]

NEVADA COOK, *Respondent*, v. C. S. MOODY, *Appellant*.

INSOLVENT CORPORATION — ILLEGAL PREFERENCE.

Although a mortgage is given by an insolvent corporation to a creditor, who has knowledge of its insolvency, with the intention and expectation that the corporation will, by means of an extension of time of payment thus secured, be enabled to continue business and eventually pay off its indebtedness, the mortgage constitutes a preference voidable at the instance of either existing or subsequent creditors, under the rule that the property of an insolvent corporation is a trust fund for the benefit of all creditors. (GORDON, J., dissents).

Appeal from Superior Court, Skagit County.—Hon. HENRY McBRIDE, Judge. Affirmed.

*E. C. Million*, for appellant.

*J. K. Chambers*, for respondent.

The opinion of the court was delivered by

Scott, C. J.—This action was brought in the nature of a creditor's bill to wind up the affairs of the Belfast Shingle Company, a corporation, and cancel a mortgage on its property held by appellant, on the ground that an illegal preference had been given over the other creditors of the company, and resulted in a decree adjudging it insolvent, appointing a receiver therefor and setting aside the mortgage and sale thereunder. The appeal is taken from that part of the decree holding the appellant's mortgage invalid. The evidence is not brought here and the contention is that the decree is not supported by the findings.

It appears from the facts found that in April, 1896, said company was indebted to various creditors in about $9,100, including a $1,200 purchase price mortgage on its machinery. At that time the mortgage in question was given to secure the payment of $4,800 of its indebtedness, which amount of claims appellant held as trustee for the owners thereof, the officers of the company representing at the time to appellant that the company was indebted (outside of said $1,200 mortgage and the claims secured by the mortgage then given) in only the sum of $1,000, when in fact such indebtedness was much more than that as stated, and the known liabilities of the company then exceeded its assets, of which fact appellant had notice; but the officers of the company and appellant believed that by extending the time of payment of said $4,800 for one year the company could pay its other debts and be able to operate its mill and carry on its business. The court found that no fraud was intended by appellant or the company, but also found that at the time of the execution of said mortgage said company

was unable to pay its debts in the ordinary course of business affairs and was insolvent and would have been compelled to shut down its mill and cease doing business had it not been for the execution of said mortgage and the obtaining of the extension of time of payment of the indebtedness thereby attempted to be secured, all of which was well known to the said C. S. Moody. The company continued to operate its mill until November 15 following, when it shut down and has not done business since. On December 14, 1896, appellant began an action to foreclose his mortgage, and, there being no defense interposed, he by default took a decree of foreclosure, and had an order of sale issued and the property sold at public auction, he being the purchaser. The mortgage covered all the property the company owned. The company was indebted to the respondent at the time the mortgage was given, and she continued in its employ for some months thereafter. Payments were made to her from time to time, but at no time did the aggregate of such payments equal the amount of her claim.

Appellant contends that, there being no fraud in fact attending the giving of the mortgage, and as he had foreclosed it and purchased the property before the respondent's suit was instituted, the decree should have been in his favor. But the claims secured by his mortgage were of no higher standing than respondent's, nor, for aught that appears, than that of the other unsecured indebtedness. Appellant then knew that the company was insolvent, and its property was a trust fund for the benefit of its creditors. The mere belief that the company might be able to continue its business and pay off its other indebtedness could not alter the legal status of the property and entitle these antecedent debts attempted to be secured by the mortgage to a preference payment, in view of the fact that the respond-

ent's action was promptly commenced after the foreclosure. Had there been an unreasonable delay in this, another question might be presented. As it is, there is nothing in the case to take it out of the general rule, holding such property a trust fund for the benefit of all the creditors, adopted in the numerous cases heretofore decided by us.

A further contention is made to the effect that the decree should at least be modified to the extent of providing that only those claims in existence at the time the mortgage was executed should be entitled to be placed upon the same basis as those secured by the mortgage. But there is no just reason for making any such distinction here. The appellant was willing that the company should continue its business, knowing its insolvent condition, and the further indebtedness incurred in so continuing it is in equity as much entitled to payment as the prior claims. While the subsequent claimants were charged with notice of the mortgage after it was recorded, they had as much right to presume that the company could eventually pay its indebtedness as appellant had.

Affirmed.

REAVIS and DUNBAR, JJ., concur.

GORDON, J., dissents.