[No. 3034.   Decided February 18, 1899.]

THE STATE OF WASHINGTON, *Respondent,* v. H. H. HARD-
ING, *Appellant.*

FORGERY—WHAT CONSTITUTES—UTTERING FORGED DRAFT—CRIMINAL
LAW—VALIDITY OF JUDGMENT ON DEMURRER—REHEARING.

Bal. Code, § 7128 (Penal Code, § 63), comprises within its
purview the crime of uttering forged drafts, as well as the crime
of forging that character of written instruments.

Under Bal. Code, § 6898 (Code Proc., § 1282), which provides
that judgment may be rendered against defendant in a criminal
case, if he fails to plead upon the overruling of his demurrer to
the indictment or information, he may be sentenced where he
declines to plead, after ample opportunity to do so, as the sub-
sequent enactment of Code Proc., § 1364, providing that "no per-
son indicted or informed against for any offense shall be con-
victed thereof, unless by confession of his guilt in open court or
by the verdict of a jury accepted and recorded in open court,"
cannot be construed as a repeal of § 1282, either directly or by
implication.

A petition for rehearing presents no matters for the con-
sideration of the court, when it is based on matters not urged
on the original hearing.

Appeal from Superior Court, King County.—Hon.
WILLIAM HICKMAN MOORE, Judge.   Affirmed.

*Richard Winsor, George E. Morris,* and *John F. Dore,*
for appellant.

*James F. McElroy,* Prosecuting Attorney, *John B.
Hart,* and *Walter S. Fulton,* for The State.

The opinion of the court was delivered by

DUNBAR, J.—The information in this case charges the crime of forgery, and the charging part of the information is as follows:

" He, the said H. H. Harding, in the county of King, state of Washington, on or about the 13th day of December, 1897, then and there being, did then and there wilfully, knowingly, falsely, fraudulently, unlawfully and feloniously, utter and publish as true to Dexter Horton & Co., Bankers, a corporation duly organized and existing and doing business under and by virtue of the laws of the state of Washington, a certain false and forged writing on paper commonly called a draft of the tenor following: (setting forth the description of the draft), and he, the said H. H. Harding then and there being did then and there well know the said instrument of writing to be false and forged, and the same was then and there uttered and published by the said H. H. Harding with the intent then and there to injure and defraud the said Dexter Horton & Co., Bankers, and other persons now unknown."

To this information defendant filed a demurrer, alleging that the facts charged did not constitute a crime. The demurrer was overruled, the defendant excepting, and a plea of not guilty entered. This was on the 12th day of April, 1898. On April 19th the plea of not guilty was withdrawn; and, upon being asked to further plead, defendant refused to plead, stating that it was his intent and desire to stand on the demurrer. The court thereupon pronounced judgment of guilty upon the defendant, and he was sentenced to confinement in the penitentiary of the state of Washington for the term of fourteen years. Some subsequent proceedings were had, which are not material to the discussion of the case.

There are two errors alleged by the appellant: First, the error of the court in refusing to sustain the demurrer to the information; and, second, in pronouncing sentence

upon defendant's declining to plead. It is insisted by the appellant that the statute in relation to forgeries does not include a draft. The statute (§ 63, Penal Code, Bal. Code, § 7128), is as follows:

" Every person who shall falsely make, or assist to make, deface, destroy, alter, forge or counterfeit, or cause to be falsely made, defaced, destroyed, altered, forged or counterfeited, any record, deed, will, codicil, bond, writing obligatory, promissory note for money or property, receipt for property, power of attorney, certificate of a justice of the peace or other public officer, auditor's warrant, treasury note, county order, acceptance or indorsement of any bill of exchange, promissory note, draft, or order, or assignment of any bond, writing obligatory, or promissory note for money or property, or any other instrument in writing, or any brand prescribed by law on tobacco, beef, bacon or pork cask, lard keg or barrel, salt-barrel, or hay-bale, or any person who shall utter or publish as true any such instrument, knowing the same to be false, defaced, altered, forged, or counterfeited, with intent to defraud any person, body politic or corporate, shall be deemed guilty of forgery, and on conviction thereof shall be imprisoned in the penitentiary not more than fourteen years nor less than one year, and be fined in any sum not exceeding five thousand dollars."

It is claimed that the information does not allege an acceptance or indorsement by the defendant, who was the payee named in the draft, and hence in itself negatives any forgery by acceptance or indorsement, and thus fails to bring the alleged forgery within the purview of the statute; that the words "other instrument in writing," as used in the statute, cannot aid the information in construing "draft" into the statute, those words relating only to assignments. In other words, that it is the *assignment* of any other instrument, within which description it is insisted that the word "draft" comes, and not the uttering or publishing of the instrument, that constitutes the crime.

We do not think that this is the common-sense construction of this statute. It would be an impeachment of the intelligence of the legislature to conclude that they intended to make the assignment of a draft fall within the purview of this act, and not the uttering or forging of the draft itself, an instrument which is more commonly forged than any other instrument known to commercial business. Certain instruments are mentioned, it is true, in the first part of the section; and it is true that interjected into the middle of the section is the expression "or assignment of any bond, writing obligatory, or promissory note for money or property;" but we think, although this statute may not have been very clearly drawn, that it was the intention of the legislature to make the assignment apply only to the instruments mentioned, and that in an abundance of caution, after reciting the papers and things which were recited, and the assignment of certain of them, they added the comprehensive phrase "or any other instrument in writing," intending thereby to supply any omission which may have occurred in the recitals above. This idea is borne out by the further provisions after the words "or any other instrument in writing, or any brand prescribed by law on tobacco, beef, bacon or pork cask," etc., for it scarcely can be supposed that the legislature intended to punish one who would forge an *assignment* of a brand prescribed by law on tobacco, and not punish him for forging the brand itself. The respondent has cited in support of his demurrer the case of *State v. Heaton,* 17 Wash. 310 (49 Pac. 493). In that case the subject of the suit was not a draft, but a mere account or claim for services purporting to have been rendered King county; and, while the language of the opinion might lend some color to appellant's contention, yet the instrument under discussion was so different from the one in question here, that we do not consider that case an authority in

point.    In any event, so far as the case decides the law
contrary to the construction which we are now placing
upon the statute, it is hereby overruled.    An indictment
exactly like the one at bar, though, was sustained by this
court in _White v. Territory,_ 1 Wash. 279 (24 Pac. 447).
That case was not overruled or mentioned in _State v.
Heaton, supra;_ and it evidently was not the intention of
the court to lay down a different rule from the one adopted
by the court in _White v. Territory._    We think the infor-
mation was sufficient and the demurrer to the same should
have been overruled.

The second assignment, viz., that the court erred in
sentencing the defendant upon his declining to plead, is
equally without merit.    This question was passed upon
squarely by this court in _State v. Straub,_ 16 Wash. 111
(47 Pac. 227).    In that case the statutes were under con-
sideration, and the court quoted § 1282 of the Code of
Procedure (Bal. Code, § 6898), which is as follows:

" If the demurrer is overruled, the defendant has a
right to put in a plea.    If he fails to do so, judgment
may be rendered against him on the demurrer, and, if
necessary, a jury may be impaneled to inquire and ascer-
tain the degree of the offense."

This court said:

" Nor does this conflict with § 1290, which provides
that:    ' If the defendant fail or refuse to answer the
indictment or information by demurrer or plea, a plea of
not guilty must be entered by the court;' but rather
strengthens the construction given above, that, if the de-
murrer is denied, further plea is unnecessary and the
result will be the same as in a civil action, where, upon
the overruling of the demurrer to a complaint, the defend-
ant refuses to answer.    But, under the section just above
quoted, the plea of guilty is entered by the court only
when the defendant fails or refuses to answer the indict-
ment or information either by demurrer or plea."

This section (1282) is so clearly conclusive of the point raised here that it seems that there is no room whatever for construction. Nor do we think that the laws of 1891 (2 Hill's Code, § 1364, Bal. Code, § 6927), which are relied upon by the appellant, were intended to, or did, repeal the section just above quoted. The defendant was not deprived of any constitutional right; he had ample opportunity to plead; the record shows that he was advised by the court of the result of his refusal to plead, and he was in no way prejudiced by the action of the court in imposing sentence upon him under the circumstances as shown by the record.

The judgment will be affirmed.

GORDON, C. J. and FULLERTON, ANDERS and REAVIS, JJ., concur.

### ON PETITION FOR REHEARING.

PER CURIAM.—What purports to be a petition for rehearing is filed in this case, and an affidavit of the appellant is appended, alleging his innocence of the crime of which he was convicted, and that the reason he did not enter a plea of not guilty and try the case on the merits was because he was advised by his attorney that he had a legal defense to said action, which would in no wise prejudice his right thereafter to avail himself of a defense on the merits of his case. He alleges further that the draft on which he is charged with committing forgery has been by him taken up, paid and discharged in full.

So far as the merits are concerned, it does not appear that this draft was paid before the defendant was convicted of the crime of forgery; but it does appear from all the record in this case that the proposition which is now urged by the appellant in his behalf was not presented to this court upon the argument of the case on appeal. So

·that, strictly speaking, there is no petition for rehearing now pending. A rehearing presumes a hearing to have been had; but the proposition now urged has never been called to the attention of this court, or to that of the trial court. The record shows that this appellant has had three different attorneys, and that the attorney who now files this petition has been employed since the trial of the cause in this court. As was stated in the opinion filed in this case, the claim of the appellant that he was taken by surprise, or was deprived of any constitutional right, seems to have no merit. He pleaded not guilty in the first instance and, after a considerable length of time, withdrew his plea and refused to plead at all, and the court, on his announcing that he elected to stand upon his demurrer to the information, and on his refusal to plead further to said information,—the said demurrer having been overruled,—adjudged him guilty of the crime of forgery and sentenced him to the penitentiary. Out of an abundance of caution, this judgment and sentence was afterwards revoked and set aside, and the defendant was granted opportunity to show cause, if any he had, why judgment should not be pronounced against him. He was fully advised by the court of the effect of his refusal to plead and was plainly told by the court that, if he continued to refuse to plead to the indictment, judgment would be entered against him. Defendant was then asked if he had any legal cause to show why judgment should not be pronounced against him, to which he replied that he had not, and judgment was then pronounced under the plain provisions of the statute. ·

We think, in the first place, that there is no proper petition for rehearing presented, and that, treating the application here as a petition for rehearing, it shows no merit whatever. The petition will therefore be denied.