[No. 3071. Decided March 4, 1899.]

W. F. BURRELL et al., Appellants, v. J. B. BENNETT, as Receiver of the Puget Sound Loan, Trust and Banking Company, Respondent.

INSOLVENT CORPORATIONS—FRAUDULENT PREFERENCES.

A pledge of collateral security, given by an insolvent corporation to secure a pre-existing indebtedness, constitutes a fraudulent preference as to other creditors, where the secured creditor had knowledge, or, from his relations with the insolvent corporation, must be presumed to have had notice, of its condition.

Appeal from Superior Court, Whatcom County.—Hon. HIRAM E. HADLEY, Judge. Affirmed.

N. H. Bloomfield, and Bloomfield & Evans, for appellants.

Black & Leaming, for respondent.

The opinion of the court was delivered by

REAVIS, J.—The Puget Sound Loan, Trust & Banking Company was, in July, 1893, under control of a receiver appointed by order of the superior court, and so remained until November, 1894. On that date its officers, under the terms of an agreement between the bank and its creditors, and by permission of the superior court, resumed business. One of the conditions of its resumption of business was that money should be borrowed from the Bank of California and other parties, including the appellants here, for the purpose of carrying on the business, and to be used in payment of the creditors of the bank. Under the arrangement so made, the banking company borrowed $5,000 from the appellants and, as evidence of the indebtedness, on November 24, 1894, delivered to appellants two certificates of deposit of $2,500 each, pay-

able respectively six and nine months after date; and also delivered to appellants certain collateral securities, consisting of notes, stock and mortgages, as security for the payment of the certificates of deposit. In May, 1895, when the first certificate of deposit was due, the banking company asked for an extension of time. After some negotiations between the banking company and the appellants, the payment of $600 was made to appellants and the note and mortgage here in controversy were delivered to appellants as additional security, with a written power of sale thereof. The banking company continued to carry on business until November, 1895, when it was adjudged insolvent and a receiver appointed to take charge of its affairs. The certificates of deposit not having been paid, appellants commenced this action to foreclose and sell their security so pledged. The respondent receiver appeared and made two defenses to the suit. First, that the pledge of the note and mortgage as collateral security was made without authority of the trustees of the banking company; that there was no formal resolution of the board authorizing it; second, that the company was at the time in fact insolvent, and that the delivery of the collateral security to appellants with such knowledge was an unlawful preference of appellants over the general creditors of the banking company.

1. The delivery of the collateral security to appellants by the officers of the banking company was, we think, authorized; and the only question presented for determination here is whether the delivery of the collateral security in suit to appellants was at the time an unlawful preference by the insolvent corporation of appellants and an injury to the other general creditors.

2. The 16th finding of fact made by the superior court is as follows:

" This court further finds as a fact that the officers of

said bank acted in good faith in pledging said collaterals on said 25th day of May, 1895, believing the same to be to the best interest of said bank, and that said officers did not at said time realize that said bank was insolvent; and that plaintiff received said pledge and granted said extension of time without knowing that said bank was insolvent; but this court further finds as a fact that the officers of said bank and plaintiffs should have known from the facts at that time before them that said bank was either insolvent or in imminent danger of insolvency; and the officers of said bank also knew that unless said extension of time could be procured from plaintiffs and also from other creditors whose claims against said bank matured on or about said day, that said bank could not continue business."

The finding is challenged by counsel for appellants as not sustained by the evidence and as immaterial. That, at the date mentioned in the finding, the bank was insolvent, was also found by the superior court, and is abundantly sustained by the evidence; and some criticism may be properly made of the expression "that said officers of the bank did not at said time realize that said bank was insolvent," because we think it entirely improbable that intelligent banking officers, in the management of its affairs at that time, did not know the bank was in fact insolvent. However, that portion of the 16th finding, "but this court further found that the officers of the said bank and plaintiffs [appellants] should have known from the facts at the time before them that said bank was either insolvent or in imminent danger of insolvency," is sustained, we think, by the evidence. The appellants were not strangers to the insolvent banking company; they were familiar with the fact that it had been insolvent, and its affairs under the control of the receivership until November, 1894, and that it reopened under an agreement with its creditors and was conducting its business in accordance with the terms of its reopening. Appellants had requested

the payment of the certificate of deposit when it fell due. Ten shares of stock in another corporation, held by appellants as collateral security, had become valueless. The defendant banking company asked for an extension of time, and for such extension the note and mortgage in suit here were given as additional security. The amount of appellant's certificate of deposit was reduced by cash payment and additional security given for the remainder. The officers of the banking company knew that, unless the extension of time was secured from the plaintiffs and the other creditors whose claims against the bank matured about that time, the bank could not continue business. Counsel for appellants urge with much earnestness that the facts shown in this case do not fall within the former decisions of this court upon unlawful preferences by insolvent corporations. Under the conditions existing at the time the additional collateral security was delivered to appellants, the banking corporation being in fact insolvent, the relations of the appellants and the banking officers and their knowledge of its affairs being such as to advise them of its condition, the pledge of the collateral security was in fact a preference of appellants by an insolvent corporation, within the rule announced by this court. *Conover v. Hull,* 10 Wash. 673 (39 Pac. 166, 45 Am. St. Rep. 810); *Cook v. Moody,* 18 Wash. 114 (50 Pac. 1020, 63 Am. St. Rep. 872).

The frequent and exhaustive consideration of what is termed the "trust fund theory" by this court in its construction of the statutes and policy of the state would make it unprofitable to review the numerous and very respectable authorities presented here for our consideration by counsel for appellants, as the court is satisfied with its adjudications heretofore rendered on this subject.

The judgment of the superior court is affirmed.

Gordon, C. J., and Dunbar and Anders, JJ., concur.