GRINSTEAD v. UNION SAVINGS & TRUST CO.

In re ALGONA LUMBER & SHINGLE CO.

(Circuit Court of Appeals, Ninth Circuit.   October 2, 1911.)

No. 1,958.

BANKRUPTCY (§ 178*)—MORTGAGE—FRAUDULENT TRANSFER OF PROPERTY.

A bank lent money to an insolvent Washington corporation and took a mortgage on its property as security. The loan was made at the instance of the largest creditor of the corporation, who represented to the bank that the corporation desired to pay up its other debts and have but one creditor, and that the security was ample. Such creditor received payment of the greater part of his debt, and the remainder of the money was applied on other debts. More than four months thereafter the corporation became bankrupt. Under the law of the state a voluntary preference of a creditor by an insolvent corporation is voidable by other creditors. Held that, as the bank was not a creditor and gave full consideration for the mortgage, without knowledge of the insolvency so far as appeared, and the money was used for the payment of debts, the mortgage was not impeachable by creditors, and therefore not by the trustee, under Bankr. Act July 1, 1898, c. 541, § 70e, 30 Stat. 566 (U. S. Comp. St. 1901, p. 3452), which provides that a trustee may avoid a transfer which any creditor might have avoided.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 178.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

In the matter of the Algona Lumber & Shingle Company, bankrupt. Appeal by Loren Grinstead, trustee, from an order allowing the claim of the Union Savings & Trust Company as a secured debt. Affirmed.

Cassius E. Gates, for appellant.

Walter A. McClure, Henry F. McClure, and Wm. E. McClure, for appellee.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. On June 2, 1910, the Algona Lumber & Shingle Company, a corporation, owed the Union Machinery & Supply Company, a corporation, approximately $8,000, the Fremont State Bank about $5,000, Harbold $5,000, and about $3,000 for labor. On that date it borrowed from the Union Savings & Trust Company, the appellee herein, $12,000, and to secure the same executed mortgages upon all its real and personal property. Four months and a few days later it filed a voluntary petition in bankruptcy, and was adjudged a bankrupt. The appellee filed its proof of debt as a secured claim against the estate, the claim was allowed, and the property was sold, and was purchased by the Union Machinery & Supply Company. Objections had been filed to the claim of the appellee, but the objections were overruled by the referee. The trustee petitioned the District Court for a review of the referee's order, asserting that the mortgages were invalid and void as to creditors, for the reason that the bankrupt was insolvent, and was known to be insolvent by the appellee, at the time when they were executed, and that they were executed to give a preference to the Union Machinery & Supply Company over and above all other creditors, which preference was created indirectly through the appellee. The ruling of the referee was sustained by the court, and the claim of the appellee was allowed in full. From that ruling the present appeal is taken.

Of the $12,000 loaned to the bankrupt, $7,000 was immediately paid to the Union Machinery & Supply Company, $1,000 to the Fremont State Bank, $1,000 to Harbold, and the remaining $3,000 was paid for labor. The appellant contends that the loan was not bona fide, but was merely a subterfuge on the part of the Union Machinery & Supply Company to secure its account indirectly through the appellee. The evidence shows that the debt of the bankrupt to that company was long past due, and that the corporation was insolvent at the time when the mortgages were made. Application for the loan was made to the cashier of the appellee by Mr. Farnsworth, the president of the Union Machinery & Supply Company, and upon his representation that the bankrupt was indebted to his company and other creditors, and that it desired to borrow enough money to pay the Union Machinery & Supply Company and other claims, so that thereafter it might owe only the bank. The cashier made no inquiry of others as to the value of the property of the bankrupt. He testified that Farnsworth stated

to him that from his knowledge the loan was a good one, and he (Farnsworth) would have no hesitancy in taking the property over if the bank had to take it; that if the payments were not promptly made by the bankrupt, and the bank should be required to proceed to protect itself,

"that he personally would have no hesitancy in taking the property for the amount of our debt. * * * Q. Then, in other words, Mr. Farnsworth guaranteed this account? A. If that is a guarantee, he did. Q. You didn't rely upon the property of the Algona Lumber & Shingle Company as your sole security? A. Well, yes; we did. Q. As your sole security? A. Of course, we looked to Mr. Farnsworth in case we had any difficulty over the matter."

Upon his cross-examination the cashier stated that the loan was made on the strength of the security, and that Farnsworth did not agree to take the property off his hands in case the bank had to take it; but he testified that Farnsworth said—

"he would be entirely willing to take it, if we had to take it. He said he believed the loan to be a good one; but, if we had to take the property, he would have no hesitancy to take it. * * * Q. So that you were protected from loss in the proposition by Mr. Farnsworth? A. Well, we felt we were; yes."

We may assume from this testimony that the appellee relied, not only upon the value of the mortgaged property, but upon the promise of Mr. Farnsworth to take the property in case foreclosure became necessary, and to protect them from loss. The petition in bankruptcy having been filed more than four months after the date of the execution of the mortgages, the question arises whether under section 70e of the bankruptcy act, which provides that if a creditor could have avoided the transfer under the laws of the state the trustee can do the same, the transfer in this instance was voidable at the instance of the trustee, and whether the referee and the court below erred in sustaining the same. .

Section 70e provides that the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred or its value from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. The Supreme Court of the state of Washington has held that the property of a corporation forms a trust fund for the benefit of all its creditors, and that a voluntary preference in case of insolvency is void. Thus a pledge was held void in a case where the bankrupt, after insolvency, borrowed money from the plaintiff with which to resume business, and pledged collaterals as security, and upon maturity of the loan it was again insolvent, and secured extension of time, and paid a small sum, and pledged further collaterals, the plaintiff having constructive notice of its insolvency (Burrell v. Bennett, 20 Wash. 644, 56 Pac. 375), and that a transfer of property by an insolvent corporation, whereby preference is given to one creditor over others, is against equity and good conscience, and, while it is not void, is voidable by creditors (Holbrook v. Peters & Miller Co., 8 Wash. 344, 36 Pac. 256). But in the present case the appellee took no unlawful preference. It was not a creditor of the bankrupt, and it does not appear from the evidence

that it ever had any dealings with the bankrupt prior to June 2, 1910, the date when it loaned the bankrupt $12,000 and received security therefor. There is nothing to show that it then had any notice of the bankrupt's insolvency. It had notice that the bankrupt was in debt, that its principal creditor was the company from which the application for the loan was made, and that it was the intention of the borrower to pay that creditor and others with the money.

There is no proof in the evidence that the appellee participated in any design to hinder, delay, or defraud creditors, or to give a preference to one creditor over others. So far as the appellee was informed as to the purpose of the borrower, it was that the latter intended to pay up its debts, and thereafter owe but one creditor, and the appellee was further informed that the property which was turned over to it as security was of the value of $30,000 or $40,000. The act of the appellee was not of itself calculated to diminish the fund which the bankrupt held in trust for its creditors. We may assume that Farnsworth knew that the bankrupt was insolvent at the time when the loan was made, and that he and the bankrupt entered into a scheme whereby the money was to be borrowed, and the greater portion thereof applied to the payment of his debt, and that thereby he was to obtain an inequitable preference over the other creditors; but the facts must be viewed in the light of the question under consideration here, and that is whether the appellee loaned the money in good faith for a valuable consideration. There can be no question that there was a valuable consideration. As impugning the good faith there may be suspicion, but there is nothing tangible in the way of testimony. The referee and the court below would not have been justified in sustaining the objections on that ground. In Vincent v. Snoqualmie Mill Co., 7 Wash. 566, 35 Pac. 396, it was held that where a corporation which had been indebted gave a mortgage for money to pay the purchase price of property mortgaged, and to secure the legal title to the same and to place itself in a better position for business, the mortgage was not an illegal transaction, nor given to hinder, delay, or defraud creditors.

The judgment is affirmed.