[No. 11851.  *En Banc.*  June 30, 1915.]

I. H. JENNINGS, *as Trustee in Bankruptcy, etc., Appellant,*
v. FRANK SCHWARTZ, *Sole Trader as Alaska Junk
Company, Respondent.*[1]

SALES—CONDITIONAL SALES — RECORDING — "SIGNED" BY VENDOR—
VALIDITY—SUBSEQUENT CREDITORS — SPECIFIC LIEN — NECESSITY.  Al-
though a conditional sales contract was not "signed" by the vendor,
within the meaning of Rem. & Bal. Code, § 3670, providing that cer-
tain conditional sales of personal property shall be absolute as to
subsequent creditors, etc., unless within ten days after taking pos-
session by the vendee, a memorandum of the sale signed by the
vendor and vendee, be filed in the auditor's office, it is valid as be-
tween the parties, and where the vendor retook possession for de-
fault, before any creditor acquired a specific lien on the property
and before the appointment of a trustee in bankruptcy, the rights of
the vendee were terminated and the trustee acquired no title to the
property (overruling on rehearing Id., 82 Wash. 209).

FULLERTON and CHADWICK, JJ., dissent.

Appeal from a judgment of the superior court for King
county, Humphries, J., entered November 20, 1913, upon
findings in favor of the defendant, in an action for conversion,
tried to the court.  Affirmed.

*Nelson R. Anderson* and *France & Helsell,* for appellant.

*Wright, Kelleher & Caldwell,* for respondent.

## ON REHEARING.

MOUNT, J.—After the original opinion was filed in this
case, a rehearing was granted and a reargument was had to
the whole court sitting *En Banc.*  The original opinion will
be found in 82 Wash. 209, 144 Pac. 39.  The facts therein
stated are substantially correct.  The record shows that the
vendor of the boiler in question retook possession of the boiler
in December, 1912, instead of February, 1913, as therein
stated.  Upon this question, the trial court found:

[1]Reported in 149 Pac. 947.

"That after the said default in payment and said election by the vendor to terminate said contract and prior to the filing of petition in bankruptcy of the said Pacific Coast Glass Company, a corporation, and prior to the election of the plaintiff herein as trustee of the said bankrupt estate, and prior to the said trustee taking possession of any of the property of the said Pacific Coast Glass Company, the defendant herein, in compliance with the terms of said conditional sale contract took possession of said boiler and has been since said date and now is in possession thereof."

In the former opinion, we rested our decision solely upon the point that the conditional bill of sale mentioned was void because it was not signed by the vendor, as the statute provides. We are now satisfied that it was not necessary to pass upon the validity of the conditional sale contract as affected by creditors of the vendee, because the conditional sale was rescinded and possession of the property was retaken by the vendor before any right or lien of creditors attached. The validity of the sale, therefore, as between the original parties to it, must control the decision. As noted above, the property was sold to the Pacific Coast Glass Company upon conditional sale in August, 1912. Thereafter, in December, 1912, on account of default in payment, the vendor retook possession of the property before the Pacific Coast Glass Company was declared bankrupt, and before a receiver or trustee in bankruptcy was elected. This court has many times held that, where contracts of this kind are void as between the vendor and creditors of the vendee, yet, as between the vendor and the vendee, such contracts are valid. *Watson v. First National Bank of Clarkston*, 82 Wash. 65, 143 Pac. 451; *Secor v. Close*, 83 Wash. 77, 145 Pac. 56; *Malmo v. Washington Rendering & Fertilizing Co.*, 79 Wash. 534, 140 Pac. 569; *Heal v. Evans Creek Coal & Coke Co.*, 71 Wash. 225, 128 Pac. 211.

In the *Malmo* case, in discussing the difference between a chattel mortgage and a conditional sale contract, we said:

"The one instrument evidences a lien against the legal title; the other is the assertion of the legal title as against the presumption of possession. The purpose of requiring a public record in both cases is the same so far as the rights of creditors are concerned; that is, to prevent the one in possession of the property from pledging it to secure the debt of one creditor and then using it as an unincumbered asset to incur other obligations. As between the parties themselves, there is no distinction between the two instruments, in that the failure to record does not disturb the rights of the immediate parties."

And in the *Secor* case, where there was a conditional sale contract which had not been filed within time, or at all, we said:

"Some contention is made by counsel for appellants, seemingly rested upon the theory that appellant Gadbaw's rights have been secured, as he claims them here, by the failure of respondent to file in the office of the county auditor the conditional sale contract, and by Gadbaw becoming a subsequent creditor in good faith of Luther and Mitchell. We are quite unable to see that these facts are of any avail to appellants here. The facts show nothing more than that the sale of the mill to Luther and Mitchell became, in law, an absolute instead of a conditional one, as to subsequent creditors in good faith. But this did not prevent Luther and Mitchell returning the mill to respondent in payment of the balance due upon the purchase price thereof, even though they thereby preferred respondent as a creditor, in the absence of the value of the mill at that time being in excess of the balance due upon the purchase price, or some other element of bad faith or fraud entering into the transaction."

And in the *Watson* case, which was a chattel mortgage case, we said:

"A chattel mortgage not recorded as required by statute (Rem. & Bal. Code, § 3660 [P. C. 349 § 3]) while void as to creditors who have acquired some form of lien upon the mortgaged property, is, nevertheless, valid as between the mortgagor and the mortgagee."

And so in this case, the conditional sale contract was clearly valid as between the original vendor and the vendee; and

when the vendor, in compliance with that contract, retook
possession of the property prior to the time when any creditor
obtained a specific lien thereon, and prior to the time the
vendee was declared a bankrupt, and prior to the time of the
election of the trustee in bankruptcy, the vendor thereupon re-
gained whatever interest he had in the property. The vendee
never complied with the contract of purchase, and therefore
did not acquire title. The trustee in bankruptcy obtained no
more interest in the boiler than the vendee had at the time of
the adjudication in bankruptcy.

Upon this rehearing, we are urged by the appellant to re-
verse our rulings in *Watson v. First National Bank of Clarks-
ton, Malmo v. Washington Rendering & Fertilizing Co.*, and
other cases where we held that the word "creditors" used in
our statute means those only who have acquired some form of
lien; and we are urged to hold that the word "creditors" refers
to all creditors without regard to whether they have acquired
specific liens or not. We are satisfied that our holding in
those cases is in accordance with the great weight of author-
ity, and decline to enter upon a further discussion of that
question.

For the reasons hereinabove stated, the judgment is af-
firmed.

MORRIS, C. J., ELLIS, MAIN, CROW, and PARKER, JJ., con-
cur.

HOLCOMB, J. (concurring)—I concur in the result here-
in, but dissent from the holding based on the rulings in the
*Watson* and the *Malmo* cases cited, that the word "creditors"
as used in the statute on conditional sale contracts means
"lien creditors."

FULLERTON, J. (dissenting)—On the hearing of this cause
before the Department, two questions only were presented for
decision, namely, the validity of the conditional sale contract
as to the creditors of the vendee, and the value of the boiler.
It was assumed without question by both sides that if the con-

tract was void as to creditors—that is to say, was not signed by both the vendor and vendee, the retaking of the boiler by the vendor was wrongful and recovery could be had by the trustee in bankruptcy. This is made clear by a mere cursory examination of the briefs of counsel. The appellant stated the contentions thus:

"We will content ourselves with discussing the various assignments of error under two general heads. We will first discuss the validity of the alleged conditional sale contract, defendant's Exhibit 1. Second, we will discuss the only question of fact in the case, namely, the value of the boiler.

"The evidence clearly showed without contradiction that the contract upon which the defendant relied to establish a reservation of title in him, was not signed by the defendant in any manner whatsoever. In fact, it is admitted by stipulation of counsel that the only place where the defendant's name appears in the instrument at all is in the body of the instrument, in which he is described as the party of the first part and in that instance the name is printed as a part of a regular printed form.

"The first question is one of law, involving the construction of section 3670, Rem. & Bal. Code, relating to conditional sale contracts.

"Plaintiff contends, First: That the instrument is void as to all parties; that it is a mere offer and not a contract, and Secondly: If not absolutely void, then, void as to subsequent creditors in good faith under the statute for the reason that the vendor did not sign the instrument."

The respondent stated them in the following language:

"The appellant's counsel brought this action upon the theory, which they are still urging upon this court, that the conditional sale contract—defendant's Exhibit 1—was not 'signed by the vendor and vendee' as required by statute, but that it was signed by the vendee only. This respondent contends that the conditional sale contract was in all respects a contract of sale and that the vendor's name printed at the top thereof, as party of the first part, with the form filled in by the vendor, the contract signed at the bottom by the vendee, the same then filed by the vendor within ten (10) days after the taking of possession of the boiler by the vendee,

constituted a compliance with the state statute. In other words, the act of the vendor in placing his name, under which he was doing business as a sole trader, at the top of this contract, even though he caused it to be printed thereon, it being the form which he had prepared for the purpose and which he had filled in and adapted to the particular sale, he having delivered the property and then immediately filed the said conditional sale contract for record in the proper county within ten days, constituted a signing of the instrument within the meaning of the statute and was a compliance with the wording, reason and spirit of the law."

And the concluding part of the respondent's brief is as follows:

"Respondent submits that the decision of the court both upon the point that respondent had signed the contract of sale and that the boiler was of the value of $200 at the time that it was re-taken, is right and just and that the judgment should be affirmed."

The arguments of counsel at the bar followed the positions as thus outlined. Nowhere was it contended, or even remotely suggested, that the "validity of the conditional sale contract as affected by creditors of the vendee" was not in any manner involved. The Department, assuming that the arguments embraced the entire issue, decided the first question presented adversely to the contention of the respondent, and the second question in accordance with their contention; reversing the trial court only as to the first contention.

The question on which the majority now rests the decision is, therefore, a question not brought before the court on the first hearing, but is a new question presented for the first time in the petition for rehearing. The appellant makes the objection that the change of front comes too late; that the respondent cannot now, after he has submitted his cause to the decision of the court on one question and has met with defeat upon that question, reverse his position and have the cause determined upon another and entirely different question. The majority do not answer or comment upon this ob-

jection, although it seems to me that it but invokes a well-settled principle of appellate practice, and a principle to which we have adhered from the earliest times.

In *Lybarger v. State*, 2 Wash. 552, 564, 27 Pac. 449, 1029, the appellant, after the cause had been submitted and determined, filed a petition for rehearing founded upon an alleged imperfection in the transcript, and for leave to be heard upon the amended record. The court denied the relief, saying that,

". . . public policy will not allow cases to be tried by piecemeal. It cannot allow an appellant to rest his case on certain points of the record, and if he fail, to try his case on another and different record."

To the same effect are *State ex rel. Abernethy v. Moss*, 13 Wash. 42, 42 Pac. 622, 43 Pac. 373; *State v. Harding*, 20 Wash. 556, 56 Pac. 399, 929; *State ex rel. Milwaukee Term. R. Co. v. Superior Court*, 54 Wash. 365, 103 Pac. 469, 104 Pac. 175, and *King v. Upper*, 57 Wash. 130, 106 Pac. 612, 1135, 31 L. R. A. (N. S.) 606. The position of the court is well summed up in the case of *State ex rel. Milwaukee Term. R. Co. v. Superior Court*, in the following words:

"The respondent has filed a petition for a rehearing *En Banc*, wherein it seeks to raise the question that the condemnation sought is for a private and not a public use. This question was not raised, either in the original briefs or in the oral argument, and was not considered by the court. The questions urged by the respondent were: (1) That the relator is not a railroad corporation within the meaning of the eminent domain statute; (2) that the property sought to be condemned was already devoted to a public use, and (3) that there was not a sufficient showing of necessity of appropriation. We cannot sanction the practice of permitting new questions to be raised in a petition for rehearing.

" 'It is the policy of the law to require parties to present all questions in the briefs originally filed, and not to permit new points to be made in the petition for a rehearing. The rule adopted pursuant to this policy is a salutary one, and one dictated by considerations of justice as well as of expediency. If parties were permitted to submit cases without presenting

all the material points a loose and slovenly practice would be encouraged, and the administration of justice would be delayed and embarrassed. To tolerate such a practice would impose the duty upon the courts of examining and deciding cases in detached parts, and thus delay decisions, produce confusion and encourage conduct not consistent with fair dealing and good morals.' Elliott, App. Proc., § 557."

I am unable to distinguish the question presented in these cases from the question presented in the case at bar, and I am at a loss to know why the majority think them inapplicable. If the cases are to be overruled it should not be done without comment.

But the conclusion reached upon the merits is, in my opinion, erroneous. The conclusion is rested, as will be noticed, upon the contention that the contract of sale is valid as between the vendor and the vendee, and the assumption that the property was retaken by the vendor before any subsequent creditor of the vendee had acquired a lien upon it. It is this assumption that I do not think the record justifies. While it is true that the property was retaken before the appellant was adjudged a bankrupt, it is equally true that it was retaken after the vendee had become insolvent, whether we fix the time of the retaking as in the month of December, 1912, as do the majority in the *En Banc* opinion, or in the month of February, as did the Department in the opinion filed by it. The evidence makes it clear that the vendee became hopelessly insolvent early in the month of November, 1912, and from that time on was unable, because of its insolvency, to carry on its ordinary business. Since it was a domestic corporation, its property then became, under the trust fund doctrine of this state, a trust fund for the benefit of its creditors, and could not, after that time, be lawfully diverted from the satisfaction *pro rata* of the creditor's claims, either by voluntary mortgages or pledges made by the corporation, or by creditors seeking by attachment or other process to acquire a preferred lien thereon. *Thompson v. Huron Lumber*

Co., 4 Wash. 600, 30 Pac. 741, 31 Pac. 25; *Biddle Purchasing Co. v. Port Townsend Steel W. & Nail Co.*, 16 Wash. 681, 48 Pac. 407; *Cook v. Moody*, 18 Wash. 114, 50 Pac. 1020, 63 Am. St. 872; *Allen v. Baxter*, 42 Wash. 434, 85 Pac. 26; *Washington Liquor Co. v. Alladio Cafe Co.*, 28 Wash. 176, 68 Pac. 444; *Carstens & Earles v. Hofius*, 44 Wash. 456, 87 Pac. 631; *Carroll v. Pacific National Bank*, 19 Wash. 639, 54 Pac. 32; *Burrell v. Bennett*, 20 Wash. 644, 56 Pac. 375.

The principle upon which the doctrine announced rests is that the creditors of the corporation on its insolvency acquire an interest in its property, enabling them to subject such property to the satisfaction of their claims. The precise nature of this interest may be somewhat hard to define, but it is tangible and real nevertheless, and enables the creditors of the insolvent to have the insolvent's property divided among them without preferences of any kind. Being tangible and real, it is an interest which will defeat any mortgage, conditional contract of sale, or other instrument so defectively executed or acknowledged as to be void as to the creditors of mortgagor or vendee who have acquired a specific lien upon the property. In other words, this right of the creditors is a valid, tangible, equitable lien on the insolvent's property, and does not depend for its effect, as the majority seem to imply, upon a judgment of bankruptcy or a judgment of insolvency by a court, but depends upon the fact of insolvency. This rule or doctrine has in this state the force of statute, and the majority err, in my opinion, when they deny its right of enforcement to a trustee in bankruptcy.

The judgment should be reversed.

CHADWICK, J., concurs with FULLERTON, J.