[No. 14261. Dpartment Two.   January 17, 1918.]

W. H. OTTO, *Appellant*, v. FRED A. ENGLAND, *Respondent*.[1]

CHATTEL MORTGAGES—VALIDITY—CONSIDERATION.   A chattel mortgage upon logs to one who furnished capital to purchase the logs, in accordance with a custom indulged in for some time for financing the business, is not void for want of consideration.

SAME—VALIDITY—DESCRIPTION OF PROPERTY.   A technical error in describing logs in a chattel mortgage as being in a boom at Edmonds when in fact they were at Everett, does not invalidate the mortgage as between the parties.

BANKRUPTCY—RIGHTS OF TRUSTEE—PRIOR CHATTEL MORTGAGES—DECREE.   The lien of a trustee in bankruptcy attaches from the date of the bankruptcy proceedings, and does not affect a prior chattel mortgage lien which was valid as between the parties, and the validity of which was established by decree prior to the bankruptcy proceedings.

Appeal from a judgment of the superior court for King county, Ronald, J., entered February 5, 1917, upon findings in favor of the defendant, in an action by a trustee to recover a fund as property of a bankrupt, tried to the court. Affirmed.

*Cassius E. Gates* and *Louis A. Merrick*, for appellant.

*Alexander & Bundy*, for respondent.

MORRIS, J.—The appellant in this action is seeking to recover from the respondent on the theory that the respondent had, for his own use and benefit, disposed of logs and shingles belonging to the bankrupt of the value of $2,500.

[1]Reported in 169 Pac. 964.

The facts, as found by the lower court and sustained by
the record, are these: The Sioux Shingle Company was or-
ganized in 1912 by a number of shingle mill workers as a co-
operative company, and was, in August of that year, in pos-
session of a shingle mill at Edmonds under a contract of
purchase. The company had no funds with which to pur-
chase logs, and, for the purpose of obtaining such funds,
entered into an arrangement with the respondent whereby he
undertook to furnish capital to supply the mill with logs,
taking as security a chattel mortgage upon the logs and
manufactured shingles. This arrangement was carried out
in several instances between the time of its making and the
date of the transaction here involved. On December 21,
1912, the shingle company desired to purchase a shipment
of logs from the Puget Mill Company, and applied to the
respondent, under the above arrangement, to furnish the
money. Respondent promised a compliance with the request
to the satisfaction of the mill company, and the shingle com-
pany took possession of the logs and towed them to Everett.
While lying at Everett, the boom was broken and the logs
went on the beach. Due to this fact and unfavorable weather
conditions, the logs did not reach the shingle company's boom
at Edmonds until January 26, 1913. In the meantime, un-
der date of January 14th, the shingle company executed the
usual mortgage to respondent to cover the advancement,
amounting to $2,407.44, describing the logs, as it had been
accustomed to do in former mortgages, as "all the logs in-
cluded in the boom of the party of the second part at Ed-
monds, Washington," when, as a matter of fact, the logs
were at that time at Everett. On February 26, 1913, the
shingle company went into involuntary bankruptcy.

This mortgage to respondent is now attacked upon the
ground that it was an attempt on the part of the shingle
company and respondent, well knowing the insolvent con-
dition of the shingle company, to prefer the respondent over
other creditors, and upon the further ground that, at the

time of the giving of the mortgage, the logs described as within the mill boom at Edmonds were not there, but at Everett. Upon the last point the finding, sustained by the record, is that, at the time of the execution of the mortgage, the logs had been ordered towed to Edmonds, and that it was anticipated that, when the mortgage reached respondent, the logs would be in the mill boom; that respondent so understood and believed, at the time he recorded his mortgage, that the logs were at the mill, and so believing, sent his check to the Puget Mill Company in payment of the logs. On February 17, the shingle company, being conscious of its insolvency, delivered to respondent the logs then on hand and the shingles manufactured from the logs that had been cut, with the understanding that respondent would cut the remaining logs into shingles, dispose of the shingles and apply the proceeds upon the indebtedness secured by the mortgage. Respondent thereupon took possession of the manufactured shingles and the uncut logs and commenced an action in the superior court of Snohomish county to foreclose his mortgage. A receiver was appointed, who took possession of the logs and shingles, and in due time a decree was entered sustaining respondent's mortgage lien and directing the receiver to pay the same. It is further found in the same findings, and sustained by the record, that, at the time of the giving of the mortgage, there was no intent on the part of the shingle company or respondent to defraud or embarrass other creditors of the shingle company and that the shingle company was then solvent, the insolvency of the shingle company arising later when, from lack of capital and dissensions among the men, it determined to cease operations, thus losing the value of the equity in the mill property and improvements.

The case thus presents two questions, first, was the mortgage void for want of consideration; and second, was it void because of error in the description? Upon the first question little need be said. There is, in our opinion, no question

of the good faith of the transaction. The parties were following a custom indulged in for some time previous for financing the business. Each party had kept faith in carrying out the arrangement and the consideration for the mortgage was ample. There was an unquestioned technical defect in the description of the property included in the reference to the logs as then in the mill boom, when, as a matter of fact, they were in Everett. As between the parties, the description is sufficient. *Bonneviere v. Cole*, 90 Wash. 526, 156 Pac. 527. It is not claimed that any of them were misled by this error in describing the logs, or that they acquired any rights between January 14, the date of the mortgage, and January 26, the date when the logs actually reached the mill boom and answered the description of the mortgage. It is unquestioned that, at the time of the giving of the mortgage, it was the belief of the parties to it that the logs were properly described as then in the mill boom.

"Where property intended to be placed in a particular location is described as therein, it would seem that the description is good when the property is placed in such location, at least as against persons with actual notice, or except as against intervening rights, and it is not necessary that the variance be corrected in equity." 11 C. J. 472.

A like principle is announced in *Pacific Coast Biscuit Co. v. Perry*, 77 Wash. 352, 137 Pac. 483, where it was held that an unrecorded chattel mortgage is valid as between the parties and creditors subsequent to its execution who acquired no specific lien upon the property prior to the time it was filed for record. The appellant, as trustee in bankruptcy, is, under the bankruptcy act, likened unto a creditor with a specific lien dating from the bankruptcy proceedings, but this does not affect the standing or validity of liens perfected prior to the bankruptcy proceeding. *Big Four Implement Co. v. Wright*, 207 Fed. 535, 47 L. R. A. (N. S.) 1223.

Again, it must be noted that, in the mortgage foreclosure proceedings prior to the bankruptcy proceedings, the court

in its decree had established the validity of the lien upon these logs and shingles. The appellant having the same interest in the logs and shingles that the bankrupt had, the bankruptcy proceedings could not enlarge this interest nor give the trustee any greater rights than that possessed by the bankrupt when the bankruptcy proceedings began. *Jennings v. Schwartz*, 86 Wash. 202, 149 Pac. 947; *Thompson v. Fairbanks*, 196 U. S. 516; *In re Garcewich*, 115 Fed. 87.

It follows that the judgment is right, and it is affirmed.

ELLIS, C. J., MOUNT, HOLCOMB, and CHADWICK, JJ., concur.