[No. 26727.   Department Two.   September 13, 1937.]

H. E. DOVE, *as Trustee in Bankruptcy, Appellant,* v. COWLITZ VALLEY BANK, *Respondent.*[1]

*John F. McCarthy,* for appellant.

*Ronald Moore,* for respondent.

HOLCOMB, J.—This action is for the recovery of certain shares of bank stock or, in the alternative, for the value thereof.

[1] Reported in 71 P. (2d) 555.

On April 2, 1930, respondent loaned one thousand dollars to the Russell Brennan Company, a corporation. The note given to the bank as evidence of the loan was payable ninety days after date and was signed not only by the Brennan Company, but also by F. G. Barnes and H. I. Brace, individually. Barnes and Brace were at the time president and secretary, respectively, of the Brennan Company.

At the time the loan was made and as security for the payment of the same, Barnes pledged to the bank twenty shares of capital stock of The First National Bank of Longview, Washington, of the par value of one hundred dollars per share, which stock was owned by Barnes individually and which also stood in his name on the books of the bank. The pledge of the bank stock was effected by the delivery of the stock certificates endorsed in blank by Barnes and by execution and delivery to the bank of a separate written assignment thereof.

The note for one thousand dollars was not paid when due, and on July 1, 1930, the same parties executed a new note payable ninety days after date, and the original note was cancelled and surrendered. The same procedure was followed approximately every ninety days thereafter, and, on August 14, 1933, the original loan of one thousand dollars, having been reduced to nine hundred dollars, was represented by two notes, one for eight hundred dollars, due October 14, 1933, and one for one hundred dollars, due August 13, 1933.

On August 14, 1933, Barnes was adjudicated a bankrupt in the United States district court, and appellant was thereafter duly appointed trustee in bankruptcy and duly qualified as such.

April 21, 1934, respondent, without the knowledge or consent of the trustee in bankruptcy and with

knowledge that Barnes had been adjudged a bankrupt and that appellant was trustee in bankruptcy of his estate, again extended the time of payment of the indebtedness for which the bank stock had been pledged, by surrendering to the Brennan Company the two notes referred to, together with another note for seven hundred dollars which became due September 4, 1933, and took a new note for sixteen hundred dollars dated April 21, 1934, and payable ninety days after date. This note was signed by the Brennan Company and by Barnes and Brace individually.

The twenty shares of stock, originally pledged, are now represented by twelve shares which were issued to Barnes under a reorganization plan; and a stock dividend of an additional four shares has been declared, but these four shares had not been delivered to respondent at the time of trial.

All the original notes given to respondent and all renewals thereof were signed by the same parties, namely: Russell Brennan Company, by F. G. Barnes, president, H. I. Brace, secretary, and F. G. Barnes and H. I. Brace, individually. It is also to be noted that the collateral notes given originally and the final note taken by the bank on April 21, 1934, for sixteen hundred dollars, contain the following clause:

"In case of the non-performance of this promise, I authorize the holder of this obligation to sell, without notice to me, at public or private sale, the whole or any part of said security, and to apply the proceeds, after payment of the costs of sale, to the payment of this note, and interest thereon, and *in payment of any other obligation then owing by me to the holder, whether due or not due,* holder accounting to me for the surplus, if any." (Italics ours.)

In this manner, the stock was made collateral for other obligations of the Brennan Company, Barnes, and Brace. The stock at all times has been in the

possession of respondent, excepting when the original twenty shares were delivered to The First National Bank of Longview in exchange for the twelve shares given under the reorganization plan.

The question is presented as to whether or not the extension of time for payment of the note given to the bankrupt Barnes, together with the other makers of the note, releases the bank stock held by respondent from the pledged lien. It is essential to bear in mind that we have before us negotiable instruments. It is conceded that all parties that signed as makers are primarily liable, and thus Barnes in signing this note is primarily liable thereon.

It is well settled that parol evidence cannot be given to vary the terms of the note and to limit Barnes' liability thereon, or to show the parties who signed the note were not makers. *Anderson v. Mitchell,* 51 Wash. 265, 98 Pac. 751; *Handsaker v. Pedersen,* 71 Wash. 218, 128 Pac. 230; *Bank of California v. Starrett,* 110 Wash. 231, 188 Pac. 410, 9 A. L. R. 177; *Moore v. Kildall,* 111 Wash. 504, 191 Pac. 394; *Kuhn v. Groll,* 118 Wash. 285, 203 Pac. 44.

It is also admitted that an extension of time granted to one of the makers will not release the others. The following provisions of the negotiable instrument statute govern:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." Rem. Rev. Stat., § 3420 [P. C. § 4100].

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then

capacity to indorse." Rem. Rev. Stat., § 3451 [P. C. § 4131].

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay same. All other parties are 'secondarily' liable." Rem. Rev. Stat., § 3582 [P. C. § 4263].

Under these provisions, it is clear that Barnes was primarily liable to respondent upon the notes in question prior to his being adjudicated a bankrupt.

Under Rem. Rev. Stat., § 3509 [P. C. § 4190], there are five methods by which a person who is primarily liable on a negotiable instrument may be discharged, to-wit: By payment by the principal obligor, or by the party accommodated, by cancellation, by any act which would discharge a simple contract, and by the principal debtor becoming the holder at or after maturity; none of which was shown herein. Hence, we must conclude that a mere extension of time of payment does not discharge a party primarily liable.

The rule applicable to the release of a surety by an extension of time without his consent is not applicable to the instant case, inasmuch as we are dealing with a negotiable instrument on which the party in interest is primarily liable, and the negotiable instrument statute controls, and changes the former rule as to the release of the surety by extension of time without his consent. 8 C. J. 73, § 116. *Continental Mutual Savings Bank v. Elliott,* 166 Wash. 283, 6 P. (2d) 638, 81 A. L. R. 1005.

Also, see *Bradley Engineering etc. Co. v. Heyburn,* 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127, and note, 48 A. L. R. 716.

There is nothing in the record to indicate Barnes was discharged to any extent from his liability under the note prior to his entering into bankruptcy. The effect of the execution of the last renewal note

434

was to revive the personal obligation of Barnes. The mere taking of a renewal note for an existing one is not a payment of the indebtedness evidenced by the notes. *Boston Nat. Bank of Seattle v. Jose*, 10 Wash. 185, 38 Pac. 1026; *Pacific Southwest Trust & Savings Bank v. Mayer*, 138 Wash. 85, 244 Pac. 248.

■ It is, of course, true, as appellant points out, that the trustee is the representative of the creditors and holds the bankrupt property in trust for the creditors and for the purpose of distribution among them. This brings us to a consideration of the terms under which the stock was pledged as collateral. The maker executed the following assignment and power of attorney to the payee:

"ASSIGNMENT

"KNOW ALL MEN BY THESE PRESENTS, That F. G. Barnes of Longview, Wash., for value received, have bargained, sold, assigned, and transferred unto Cowlitz Valley Bank, of Kelso, 20 shares of the stock of the FIRST NATIONAL BANK standing in my name on the books of said Bank, and do hereby constitute and appoint COWLITZ VALLEY BANK my true and lawful attorney, irrevocable for me and in my name and stead, to sell, assign, transfer and set over said stock and for that purpose to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power, hereby ratifying and confirming all that said Attorney, or substitute or substitutes, shall lawfully do by virtue hereof.

"IN WITNESS WHEREOF, I have hereunto set hand the 2nd day of April, 1930.        F. G. BARNES

"Sworn to before me this 2 day of Apr. 1930.
                                    L. M. CLEEK
                    Notary Public in and for the State
                    of Washington, residing at .............."

It is significant that the payee did not hold this stock simply as collateral security, but that, under the assignment, it held title to the stock when Barnes was adjudicated a bankrupt. The only right which Barnes

retained with respect to the stock was the right to redeem the same, and no greater right accrued to the trustee in bankruptcy.

Moreover, the above instrument clearly indicates that the maker of the note executed not only an assignment, but a power of attorney by which the payee was given a power coupled with an interest which could not be revoked by the bankruptcy proceedings and could be revoked only by the liquidation of the indebtedness in question. *Dickinson v. Central Nat. Bank,* 129 Mass. 279, 37 Am. Rep. 351; *Hunt v. Rousmanier,* 8 Wheat. 174; 1 Mechem on Agency (2d ed.), 406, § 570; 2 C. J. S. 1160-61, § 75c; Story on Agency (9th ed.), 588, § 477.

The title to the bankrupt's property which the trustee in bankruptcy holds, relates back only to the date of the adjudication of bankruptcy. 7 C. J. 136, § 227.

The lien of respondent existing at the time of the adjudication in bankruptcy was not dissolved or vitiated by his bankruptcy, but the trustee takes the property subject to such lien, and the rights of the lien holder remain unimpaired in accordance with the agreement by which such lien was acquired. Hence, it necessarily follows that respondent is entitled to be paid the full amount secured by such lien out of the property before any part thereof is applied to the payment of claims of the general creditors.

"Equities of third persons in respect to the property of the bankrupt are accordingly not impaired by the adjudication and appointment of the trustee, . . ." 7 C. J. 135, § 226.

*In re Browne,* 104 Fed. 762; *In re Peacock,* 178 Fed. 851; 2 Collier on Bankruptcy (13th ed.), 1643, § 70e. See, also, 4 Remington on Bankruptcy (4th ed.), 106, § 1408.

By reason of the bankruptcy of Barnes, neither he nor his trustee became secondarily liable. Barnes having been primarily liable on the negotiable instrument, his position thereon cannot be altered by reason of his being adjudicated a bankrupt. The trustee holds only such title as the bankrupt had, and the latter's position remains unchanged. *Jennings v. Schwartz*, 86 Wash. 202, 149 Pac. 947; *Otto v. England*, 99 Wash. 529, 169 Pac. 964.

Appellant has cited *Wood v. Goodfellow*, 43 Cal. 185, and *Thompson v. Metropolitan Building Co.*, 95 Wash. 546, 164 Pac. 222, as decisive of the instant case. A careful analysis of these cases shows they are distinguishable on their facts from the case at bar.

We find nothing in the record to indicate the rights and liabilities of Barnes were modified subsequent to the time of adjudication in bankruptcy so as to defraud creditors within the meaning of the bankruptcy act.

The judgment must be affirmed.

STEINERT, C. J., BEALS, GERAGHTY, and ROBINSON, JJ., concur.