SOUTHERN MOTOR CAR CO. v. J. L. TALLIAFERRO et al.

Western Section. July 23, 1931.

Petition for Certiorari. denied by Supreme Court, March 5, 1932.

K. C. Larkey, of Memphis, for appellant.
W. W. Goodman, of Memphis, for appellee.

HEISKELL, J. This is a replevin suit by complainant, the Southern Motor Car Company, for a Cadillac sedan and the question involved is whether or not complainant shows a conditional sale con-

tract creating a lien prior to that claimed by defendant Talliaferro, for repairs. Other parties were made defendants, but they have been elimated without objection so that the case stands between complainant, asserting a right to possession of the car under a conditional sale contract, and defendant Talliaferro claiming right to retain possession by virtue of a lien for repairs.

It is admitted that on the 7th of August, 1929, the complainant company sold the car in question to Walter Haskins; that a certain printed form headed Southern Motor Co., Memphis, Tennessee, Automobile Contract, was filled in and same was signed by said Haskins. The first sentence in said paper reads:

"This contract shall become in full force and effect when signed by the President or Vice President of the Southern Motor Company, herein called the seller and Walter Haskins, 610 Alston, herein styled purchaser."

No question is raised upon this paper as a valid conditional sale contract, except that it was not signed by the president or vice president of the complainant company Haskins signed the contract and signed the series of notes for future payments. These notes recite: "This note is given on purchase of Used Cadillac Sedan car No. 133872 upon terms and conditions set forth in conditional sales contract of even date herewith."

It is also admitted that on or about November 19, 1930, while Walter Haskins was driving the car in question, the same was wrecked in a collision near the Barksdale Garage operated by defendant Talliaferro and, the car by direction of Haskins, was towed into said garage. Some time later, Haskins contracted to have the car repaired and this was done at an expense of $248 which is conceded to be a reasonable charge. Talliaferro claimed a lien for the repairs, refused to give up the car until his repair bill was paid and retained possession until this replevin suit was instituted. The only disputed question of fact is whether or not Talliaferro had notice, either actual, or sufficient to put him upon inquiry, of the conditional sale claim of the Motor Company. Complainant insists that he had such notice and defendant denies this. The Chancellor held that the instrument under which complainant claims was not a valid conditional sale contract; that if valid between the parties, it was not binding upon third parties, and that Talliaferro had no notice actual or constructive, of any conditional sale contract as to the car and was therefore entitled to hold the car under his common law lien until his bill for repairs was paid. Complainant's bill was dismissed and the car ordered returned to defendant to be sold in satisfaction of his lien. From this decree complainant has appealed and assigned error.

It is not necessary to set out the assignments as they merely raise the questions indicated above. The first question then to be considered is, did the failure of the president or vice president of the complainant company to sign the contract, destroy its effect as a conditional sale contract, the car having been delivered to Haskins and his notes accepted.

Chapter 15 of the Acts of 1899, Code 3670 a-1, provides:

> "In all conditional sales of personal property, wherein the title to the property is retained by the vendor, as a security for the payment of the purchase money, such retention of title shall be illegal and invalid, unless evidenced by written contract or memorandum, executed at the time of the sale."

Does this mean that the written contract, in order to be valid must be signed by both seller and purchaser, (1) as between the parties; (2) as to third parties? Again, if an ordinary contract retaining title signed by the purchaser alone would be good both as between the parties and as to third parties having notice, would this be true in case of a contract like the one in the present case which provides that "this contract shall become in full force and effect when signed by the President or Vice President of the Southern Motor Company herein called the seller and Walter Haskins, 610 Alston, herein styled purchaser."

The Chancellor takes the view that the statute requires that both parties sign the conditional sale contract to make it valid even as between them and that if this is not true, that under the form used in this case, both must sign to make a contract even between buyer and seller. The opinion says:

> "This statute, in my opinion requires that the written contract be executed by both parties thereto. An unilateral agreement, one signed by the purchaser alone, will not satisfy the statute. There must be mutuality of assent appearing from the face of the instrument. No essential part of the contract can rest in parol. The instrument to be legal and valid must be full and complete on its face. Certainly, all of this is true when the rights of a third party are considered. However, whether the statute required both seller and buyer to affix their signatures to the contract so that it will appear that both have accepted the terms and conditions thereof, or not, it is clear in the present instance that no contract, came into existence because the instrument on its face provides it shall not become in full force and effect until signed by the president or vice president of complainant company, and it was not so signed. Such signature now, or at any time subsequent to the sale, would not satisfy the statute, because a conditional sales contract must be executed at the time of sale."

Strange to say no case in this State is referred to deciding whether or not our statute requires the signature of both parties to make a valid contract. In Kenner & Co. v. Peters, 141 Tenn., 55, 206 S. W., 188, our Supreme Court had a good opportunity to decide this question but did not. In that case the only evidence of a contract was a note signed by the purchaser. The court said nothing about the failure of the seller to sign, but disposed of the case on the ground that the description of the property was not sufficiently definite.

A number of cases are cited by counsel for the defendant and by the Chancellor to support the decree of the lower court, but they are all cases arising under the statute of the State of Washington which is as follows:

"All conditional sales of personal property or leases thereof containing a conditional right to purchase where the property is placed in the possession of the vendee shall be absolute as to all creditors or purchasers in good faith, unless within ten days of the taking of possession by the vendee a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee, shall be filed in the Auditor's office of the county where at the date of the vendee's taking possession of the property the vendee resides."

It will be seen that this statute not only requires that both seller and buyer sign the contract, but that it be filed for record in order to bind third parties. Of course a subsequent creditor or purchaser examining the record and finding a contract not in compliance with the law would not be bound, and that is all these cases hold.

In re Osborn, 196 Fed., 257, is an appeal from the District Court of the United States for the Northern Division of the Western District of Washington and is based upon the statute of that State quoted supra. Kennery v. Northwestern Junk Co., 185 Pac., 636, is by the Supreme Court of Washington so that all the cases relied on to sustain the decree are based upon the Washington statute. The case last mentioned shows that reason for holding the signature of vendor necessary. The statute expressly requires it in order to bind third parties, therefore it could not be waived as to third parties. It could be waived as between vendor and vendee, but no further. In Tennessee whenever the conditional sales contract is binding between vendor and vendee, it is binding as to third parties with notice. The provision in the contract before us could be waived as between the original parties and this being done, it became binding upon subsequent creditors with notice.

In Rychen v. Tacoma Creamery (Wash.), 220 Pac., 780, relied upon by both counsel for defendant and by the Chancellor, we find this:

"But it is insisted that the delivery of the refrigerating plant made it unnecessary that the seller should sign the contract. This would be true as between the seller and the buyer, but it would not be true as against subsequent creditors who are only required to gain their information from the instrument which has been filed."

So that even under the Washington cases we have the holding that as between the parties, the contract is good between the seller and buyer without the signature of the seller, notwithstanding the statute requiring both parties to sign. A fortiori under the Tennessee statute the contract in the present case is good between the seller and buyer.

When a contract between two persons which is contemplated to be signed by both is reduced to writing and signed by one of them only, but accepted by the other, it becomes in contemplation of law a written binding contract on both. Orbeck v. Alfei, 276 S. W. (Texas), 947; citing several Texas cases.

The provision in the contract involved in the present case that it should take effect when signed by both parties, was waived when it was signed by the vendee and accepted by the vendor with the notes, and the car was delivered to the vendee.

If valid as between vendor and purchaser, can it be said to be void as to third parties with notice? In this State it is well settled that a conditional sale contract good between the parties is not binding on a third party claiming a common law lien for repairs without notice. As to such third party then the contract takes effect not by recording, but by notice. If the contract is valid as between the parties, the third party does not learn of it from the records but by hearsay, and we do not see why if he has notice of a conditional sale good as between buyer and seller it should not be binding upon him.

Lee v. Vaughn Seed Store, 141 S. W., 496, 101 Ark., 68, is not a conditional sales contract case, but a suit under the Arkansas statute which provides: "No contract for the sale of goods, wares and merchandise for the price of $30 or upward shall be binding on the parties, unless first there be some note or memorandum signed by the party to be charged." The contract was not signed by defendant, the party to be charged.

Since the hearing of this case and since the preparation of this opinion our attention has been called to Estrich on Installment Sales. At pages 212-214 he treats of conditional sales and we think agrees entirely with the views of this opinion. The Washington cases are cited as based upon the statute declaring that the contract shall not bind third parties unless signed by both seller and buyer and recorded, but we also find this: "An order for goods addressed to the seller, signed only by the buyer and containing a memorandum

as to price and terms and authorizing him to retake possession upon default in payment was held to be a contract of conditional sale within the meaning of the statute requiring such contracts to be in writing, describing the property and all conditions of such sale. National Cash Register Co. v. Lesko, 77 Conn., 276, 58 Atl., 967. "The acceptance and performance of an order by the person to whom addressed is equivalent to a signature by him. Ibid."

This author lays down the rule that under the statutes like that of Washington, the contract signed by one party only may be good between the original parties. Sheldon Co. v. Mayers, 81 Wis., 627, 51 N. W., 1082; In re Covington Lumber Co., 225 Fed., 129; Jennings v. Schwartz, 86 Wash., 202, 149 Pac. 947; Desany v. Thorp, 70 Vt., 31, 39 Atl. 309.

It is conceded that if defendant had no actual knowledge, or notice of said conditional sale contract, and no knowledge of facts sufficient to put him upon inquiry, then he is entitled to hold possession of the car even assuming the contract to be good as between the vendor and the purchaser.

Talliaferro says in his answer that his common law lien is superior to any claimed conditional sales contract, as he knew of no such outstanding contract, prior to making said repairs. His testimony is to the same effect. The testimony in rebuttal starts with the cross-examination of defendant himself. Having admitted that he had worked for the complanant, he is asked:

"Q. 55. Were you at the Southern Motor Car Company on August 7, 1929? A. August 7th— I don't think so. I am not positive about the date when I changed, some time the latter part of July. Might have been the first of August.

"Q. 56. As a matter of fact, Mr. Talliaferro, weren't you at the Southern Motor Car Company and didn't you know about Haskins' purchase of this automobile from the Southern Motor Car Company when he bought it, and that there was a title retained contract? A. No sir, I didn't know it.

"Q. 57. Weren't you in the used car department there? A. Yes, sir.

"Q. 58. Do you remember the automobile? A. I thought I recognized the car when he first brought it out there, the first time we worked on it.

"Q. 59. Isn't it a fact that Haskins told you at the time this automobile was brought in to you for repairs that he owed the Southern Motor Car Company some money on it? A. No sir, no sir."

It was not more than eight or nine months after defendant had worked in the used car department of complainant until Haskins

first brought the car to defendant's garage to be repaired. Talliaferro says he thought he recognized it. This can only mean that he thought it was a car he had known in the used car department of the Southern Motor Car Company. Is not this well nigh enough to put him on notice that the negro Haskins had bought the car from complainant on a conditional sales contract? Haskins says he told Talliaferro that he owed money on the car.

"A. Well, I don't remember just how the conversation came up, but he asked me how much I owed, if I owed as much as six hundred dollars, if I remembered. I told him I owed that, I owed more than eight hundred; but however, if occasion come about, anything should happen that I could not keep the car that I would pay him myself.

"Q. 6. Had you been doing business there with Mr. Talliaferro before that? A. Yes, sir.

"Q. 7. Had you been running a bill with him? A. Yes, sir.

"Q. 8. How long had you been doing business with him? A. Well, not very long, because I only had the car about a year, and I think it was about probably five months, five or six months. Had some little minor work done.

"Q. 9. Did you ever know Mr. Talliaferro out at the Southern Motor Car Company? A. Well, I never knew him out at the company, but I knew he had been with them; I was satisfied he could do the work because I had been told that he worked out there, and he knew how to fix it up all right.

"Q. 10. You have said that the car was wrecked on Sunday morning and pulled over to the Barksdale Garage that morning; is that correct? A. Yes, sir.

"Q. 11. And how much later was it than that, that Mr. Talliaferro told you how much the repair bill would be? A. It was the next day; some time during the next day.

"Q. 12. Did you immediately tell him to go ahead? A. Yes, sir.

"Q. 13. You told him to go ahead with the work? A. Yes, sir.

"Q. 14. Now, when was it that he asked you whether you owed any unpaid balance on the car? A. Let's see; that was when I had some other—let's see, now; I want to be sure; that was the day he started work on it, on the repairs."

J. O. Wood, an automobile salesman, says he went to see defendant about another car and that Talliaferro showed him this Haskins' job and he, Wood, said:·

" 'I think the Southern Motor Car Company ownes the biggest part of that one,' and he said 'Well, yes, but a labor lien comes first in Tennessee.' And then I asked him who authorized the

work on it. They had worked on it. And he said the negro said 'Fix it up.' And I told him, I said 'Well, maybe after all he had paid for the car.' And he said 'No, he owes more than it is worth.' And I told him, I said 'Well, he will lose the car; you will get the car for the bill.' And he said, 'Well, let Mr. Hirsch attend to that,' or 'pay for it.' Somebody was going to pay him for his work on it.''

At this time Wood says the job was not quite completed.

Talliaferro admits that Haskins told him that he owed the Southern Motor Car Company, but says it was some time after the job was completed. He also admits that Wood came to see him about a Studebaker car. He first denies that he said anything to Wood to indicate that he knew about Haskins owing money on the car. Then he says: ''I don't remember any conversation with him (Wood) in regard to the Cadillac. It was all about the Studebaker.'' Then further, on referring to the visit of Mr. Wood:

''Q. 110. The Cadillac had been finished' three days, had it? A. Three or four days.

''Q. 111. And you didn't have any conversation with Mr. Wood about it at all? A. I don't remember any conversation about the Cadillac at all.''

Talliaferro says he would not make repairs on a car on which there was a conditional sale contract, because he knew the sale contract was prior to his claim. That he had recently lost a $23 bill that way. Then on recross-examination we find this in his testimony:

''Q. 88. Mr. Talliaferro, you say you don't under any circumstances do work on a car when you know there is a conditional sales contract? A. Not unless I know the man will pay me, and is reliable further, other than the car standing for it. However, I get in and work on lots of cars that people owe on the cars. I imagine seventy-five per cent of the cars we work on they owe other folks. If a man drives in there and I have to go to the phone and find out whether he owes anything on the car he will drive off. That is, if I would drive in a place and a man didn't want to work on the car I would drive out, myself. I believe I would. However, on a bill of that kind, if I had any idea that the fellow owed anything on it I would certainly investigate it.''

The only attempt to corroborate Talliaferro is by A. O. Harmon, but this witness only says he was present on the Sunday morning when the car was towed into the garage and Haskins did not say anything about owing anything on the car. Haskins does not say he said anything about it then. There was no agreement at that time, Haskins says it was the next day when he agreed for the car to be repaired, that defendant asked him and he told defendant that

he owed at least $800 on the car. Harmon's testimony must be eliminated as of no weight whatever and the question must be determined upon the testimony of Talliaferro on the one side and Haskins and Wood on the other.

Talliaferro comes near admitting that he recognized the Haskins Cadillac as a used car he had known at the Southern Motor Car Company. What more natural then when he and Haskins had reached an agreement as to repairing the car, he should have asked Haskins how much he owed on the car, owed to complainant of course. He indicates in the last excerpt from his deposition that this is just what he would do. Then Wood says Talliferro showed him this Haskins Cadillac not quite completed and admitted he knew about the claim of the Southern Motor Car Company. On cross-examination Wood is asked:

"Q. You don't think you are mistaken in saying that he admitted that he knew all about this sale? A. No sir, I don't think there was any chance of my being mistaken about that."

Talliaferro says in two places he does not remember.

Much is made by both counsel for defendant and the lower court, of the argument that Talliaferro would not have repaired the car if he had known of the conditional sale. Yet in the quotation from his testimony supra, the defendant says that seventy-five per cent of the cars he works on are subject to conditional sales, and in a case like this he would inquire. Haskins said he did inquire before the repairs were made, and Wood says before the repairs were completed he admitted that he knew. The burden of proof is on the defendant to sustain his plea. The preponderance of the evidence is against him. The testimony of Haskins and Wood is consistent and corroborative. Talliaferro is in conflict with both, and his testimony is less reasonable than that of the conflicting witnesses. We are unable to agree with the finding of the Chancellor that defendant did not have notice of the conditional sale contract.

The assignments of error are sustained, and the decree of the lower court is reversed. A decree will go in favor of complainant for possession of the car according to the prayer of the bill. The defendant will pay the costs.

Owen and Senter, JJ., concur.