### In re W.F. MARTIN COMPANY, Debtor.

**Bankruptcy No. 3-86-01397.**

United States Bankruptcy Court, E.D. Tennessee.

Oct. 9, 1986.

---

Stone & Hinds, P.C., George F. Legg, Steven D. Lipsey, Knoxville, Tenn., for debtor.

Ritchie & Wise, P.C., Stephen R. Wise, Knoxville, Tenn., for Curtis Const. Co., Inc.

CLIVE W. BARE, Bankruptcy Judge.

In this chapter 11 case, the debtor seeks to accept an executory contract dated June 3, 1986, with Curtis Construction Co., Inc. ("Curtis"), whereby the debtor was to install roofing and siding on an addition to Volunteer Blind Industries. 11 U.S.C.A. § 365(a) (West Supp.1986). Curtis responds that an executory contract does not exist between the parties which can be accepted by the debtor.

I

The debtor subscribes to the Knoxville Builders Exchange Publication, which publishes potential jobs for bid for contractors in the East Tennessee area. The Volunteer Blind Industries project was advertised in this publication with a bid date of May 8, 1986. The architect on the project is Dewberry and Davis, and the project is located in Morristown, Tennessee.

The debtor submitted a bid in writing on May 13, 1986, to Curtis, the general contractor on the project, for installation of performed metal roofing and siding and flashing and sheet metal. The installed price quotation was $75,300.00. Curtis informed the debtor that it was the low bidder on the project for the installation of the preformed metal roofing and siding and flashing and sheet metal in late May 1986. But Curtis did not sign the acceptance block on the debtor's quotation form. The debtor on May 29, 1986, began the preparation of shop drawings for the project.

A standard AIA form subcontract agreement, dated June 3, 1986, was signed by Curtis and forwarded to the debtor by letter dated June 11, 1986. The subcontract agreement is an AIA form prepared by Curtis. The contract was accompanied by a cover letter which states: "If this contract meets with your approval, please sign and return one copy." The letter also requested the debtor to submit to Curtis all shop drawings, samples and product literature to be processed by the architect so that all required materials could be ordered. The contract, however, was not signed by the debtor nor returned to Curtis.

Shop drawings and panel system literature were submitted by the debtor to Curtis on June 13, 1986. Both Curtis and the architect approved the panel system literature and shop drawings. Curtis returned the shop drawings and panel system literature to the debtor on July 1, 1986.

The debtor inspected the job site in Morristown, Tennessee, on June 13 and June 23, 1986, in preparation for on-site construction work. The debtor submitted color samples and selection sheets for preformed wall panels to Curtis by letter dated June 24, 1986. Curtis approved these items on June 30, 1986, and the architect approved the same on July 2, 1986. Curtis returned these documents to the debtor on July 7, 1986.

In late June, the debtor placed an order with the materials manufacturer, E.G. Smith Construction Products ("Smith"), of

Pittsburgh, Pennsylvania. The debtor also obtained a manufacturing schedule from Smith for the manufacture of the materials to be used in the project. The debtor authorized direct payment for materials by Curtis to Smith in the approximate sum of $37,000.00.

The debtor prepared a "cut list" and fabricating drawings on or about July 1, 1986. Some additional work was performed by the debtor. The only work remaining to be done at this time is obtaining the materials from Smith and applying them to the project. According to the debtor, the value of the work performed to date is approximately $18,000.00. (This does not include any portion of the $37,000.00 purchase price for materials from Smith.)

Curtis made no complaint to the debtor regarding performance in accordance with the unsigned contract prior to the filing of the debtor's chapter 11 petition on July 3, 1986. After becoming aware of the filing of the debtor's bankruptcy petition, Curtis informed the debtor that it had been "burned" several times by subcontractors who had taken bankruptcy and that a bond would be required, even though no bond had been originally requested. At some point in time the debtor offered to pledge a crane to insure performance. Curtis apparently rejected the offer.

On July 14, 1986, Curtis' attorney notified the debtor by certified mail that "the offer of Curtis Construction Co., Inc. to make the contract is hereby revoked." On August 5, 1986, the debtor moved in this court to accept the contract. 11 U.S.C.A. § 365(a) (West Supp.1986). The debtor avers that it has abided by all provisions of the contract and is not in default in its terms.

At the hearing in this cause, the debtor explained its failure to sign and return the contract to Curtis as being upon the advice of counsel who had apparently requested the debtor to submit all pending agreements for their review.

1. Debtor's Proposed Findings of Fact at 4.

## II

Section 365(a) of the Bankruptcy Code, in pertinent part, provides that the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. Section 365(d)(2) provides that in a case under chapter 11 the trustee may assume or reject an executory contract of the debtor at any time before confirmation of the plan. Section 1107, with exceptions immaterial, places a debtor in possession in a chapter 11 case in the shoes of a trustee.

Although conceding that the subcontract agreement was never signed or returned to Curtis, the debtor insists it nonetheless accepted Curtis' offer. Because the debtor has done substantial work in furtherance of the agreement, debtor asserts: "A subcontract agreement exists between debtor and Curtis, the terms of which are embodied in the written document." [1] Alternatively, the debtor contends that an implied in fact executory contract exists which it may accept. Curtis responds that, since the contract was neither signed nor returned to Curtis before its offer was withdrawn, there is no executory contract between the parties which can be accepted by the debtor. Curtis maintains there is no implied in fact contract because it repeatedly insisted that the debtor sign the AIA form agreement, but the debtor deliberately did not do so.

The question to be determined is whether on July 3, 1986, the date the chapter 11 petition was filed, there existed an executory contract. "Executory contract" is not defined in the Bankruptcy Code. However, a generally accepted definition in a bankruptcy context is: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973).

Citing *Southern Motor Car Co. v. Talliaferro*, 14 Tenn.App. 276 (Tenn.Ct.App. 1931), the debtor contends that a binding contract may exist where only one party signs even though the parties contemplated a written agreement to be signed by both. In *Southern Motor,* a conditional sales contract for a motor vehicle recited in part:

This contract shall become in full force and effect when signed by the President or Vice President of the Southern Motor Company, herein called the seller and Walter Haskins ... herein styled purchaser.

The buyer signed the sales contract but the seller did not. Nevertheless, the seller delivered the vehicle to the buyer and accepted his notes for future payments. After the buyer had an accident, a priority dispute arose between the seller and a repairman who refused to surrender the vehicle until paid. Concluding that the seller's failure to sign did not prevent formation of a contract, the court stated:

When a contract between two persons which is contemplated to be signed by both is reduced to writing and signed by one of them only, but accepted by the other, it becomes in contemplation of law a written binding contract on both.

*Southern Motor,* 14 Tenn.App. at 280.

Assuming arguendo that this statement is not dicta, *Southern Motor* is clearly and materially distinguishable from the instant case. The non-signing seller in *Southern Motor* fully performed its obligations under the unsigned sales contract, and the buyer accepted the benefit thereof. In contradistinction, the debtor's performance is partial only, and Curtis has not received any benefit therefrom.

Professor Williston states:

It has been held that, "It is the undoubted rule that, where the contract contemplates the execution of it by signing, either party has the right to insist upon the condition, and mere acts of performance upon the part of one who has not signed will not validate the contract." On the other hand, it has been said: "Where the parties act under a prelimi-

nary agreement, they will be held to be bound, notwithstanding the fact that a formal contract has never been executed;" and it seems that even where signing by both parties is originally contemplated, subsequent agreement manifested by acts may dispense with the requirement.

S. Williston, *A Treatise on the Law of Contracts* § 28A (3rd ed. 1957) (footnotes omitted).

No preliminary agreement exists binding the debtor and Curtis. Further, although the debtor commenced performance the parties did not agree to dispense with signing a formal agreement. Curtis bargained for a promise of performance and continued to insist that the debtor sign the agreement even after approving drawings and samples.

A bilateral contract is a contract in which the parties expressly enter into mutual agreements. *Black's Law Dictionary* 397 (4th ed. 1951). Curtis and the debtor contemplated a bilateral, not a unilateral, contract. Unless otherwise agreed, until both parties to a bilateral contract are bound either may withdraw. *See Canton Cotton Mills v. Bowman Overall Co.,* 149 Tenn. 18, 27, 257 S.W. 398, 401 (1924). Although the debtor's assent may be evidenced by the circumstances, *Cole-McIntyre-Norfleet Co. v. Holloway,* 141 Tenn. 679, 685, 214 S.W. 817, 818 (1919), the necessary element of mutuality of obligation is missing. No agreement exists between Curtis and the debtor which Curtis could enforce. Further, as previously noted, Curtis has not received any benefit from the debtor's partial performance. *Cf. Hoyt v. Hoyt,* 213 Tenn. 117, 128, 372 S.W.2d 300, 305 (1963) (where there has been substantial performance by one party to a bilateral contract, originally invalid for lack of mutuality of obligation, the other party may not refuse performance after receiving promised benefits).

Because this case does not involve a unilateral contract—where a promise is offered not for a counter promise but for performance—the debtor's partial perform-

ance did not preclude revocation of Curtis' offer. *Cf. Lazarov v. Nunnally,* 188 Tenn. 145, 217 S.W.2d 11 (1949) (where offeree manifests assent by performance offer is irrevocable for stated time).

Contrary to the debtor's contention, this also is not a case of a contract implied in fact.

> [T]o have a contract implied in fact, there must have been a mutual agreement between the parties; that is, there must be either circumstances or conduct from which it can be inferred that the parties had a meeting of the minds.

*Judd v. Heitman,* 402 F.Supp. 929, 933 (M.D.Tenn.1975).

The debtor's deliberate choice not to sign the AIA form agreement, despite Curtis' repeated insistence that the debtor do so, compels the court to conclude there was no meeting of the minds between the debtor and Curtis.

Since the debtor did not accept Curtis' offer prior to revocation, no contract exists between them which the debtor may accept pursuant to § 365.