IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 22, 2018 Session

## CHARLES EDWARD POOLE v. DEALERS WAREHOUSE CORPORATION, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-100-14     Deborah C. Stevens, Judge**

_____

**No. E2017-02051-COA-R3-CV**
_____

This appeal concerns punitive damages.  Skyco Staffing Services, Inc. ("Skyco") provided Derrick Gilbert ("Gilbert") to Dealers Warehouse Corporation ("Dealers") for temporary work.   On February 14, 2014, Gilbert was driving a Dealers truck when he collided with a truck driven by Charles Edward Poole ("Poole").  Poole[1] sued Gilbert, Dealers, and later Skyco for damages in the Circuit Court for Knox County ("the Trial Court").[2]  Dealers filed a third-party claim against one-time Skyco affiliate People 2.0 Global, LLC ("People 2.0"), as well.  Skyco and People 2.0 filed motions for summary judgment, which were granted.  The jury returned a verdict for Poole against Dealers and Gilbert for compensatory damages of $431,508.71.  In a second phase, the Trial Court directed a verdict in favor of Dealers regarding punitive damages.  Finally, the jury returned a verdict for Poole against Gilbert in the amount of $250,000 in punitive damages.  Poole appeals, arguing he is entitled to joint and several judgment against Dealers for the punitive damages assessed against Gilbert.  Dealers, for its part, argues both that the Trial Court was correct and that a genuine issue of material fact exists as to whether it exercised supervision of Gilbert.  We hold, *inter alia*, that Dealers is not jointly and severally liable for punitive damages assessed separately against Gilbert.  We hold further that Dealers' exclusive supervisory responsibility for Gilbert was laid out in unambiguous contractual terms.  We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

_____

[1] Heather Poole was an original plaintiff but has since taken a voluntary nonsuit.
[2] Ryder Truck Rental, Lt., which leased the truck Gilbert drove, also was sued.  Ryder was granted summary judgment, dismissed from the action without opposition, and is not party to this appeal.

Henry S. Queener, III, Nashville, Tennessee, for the appellant, Charles Edward Poole.

Charles G. Taylor, III, Knoxville, Tennessee, for the appellee, Dealers Warehouse Corporation.

Norman D. McKellar and Devin S. DeVore, Knoxville, Tennessee, for the appellee, Skyco Staffing Services, Inc.

Marshall T. Cook, Hendersonville, Tennessee, for the appellee, People 2.0 Global, LLC.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and, Hannah McCann, Assistant Attorney General, for the State of Tennessee.

## OPINION

## Background

In 2002, Dealers and Labor Headquarters, a predecessor corporation to Skyco, entered into a contractual agreement whereby Labor Headquarters would provide temporary workers to Dealers to work in the latter's warehouse. Dealers agreed to "supervise and control the conduct and work quality" of the workers. Dealers agreed further that Labor Headquarters "shall have no responsibility to control the conduct and work quality of the employees and [Dealers] agrees to undertake such responsibility and shall supervise and control the conduct and work quality of employees."

In 2005, Skyco began providing temporary workers to Dealers. In a letter contained in the record, Skyco wrote to Dealers stating, in part: "I am proud to announce that Labor Headquarters, Inc. has changed our name to Skyco Staffing Services, Inc. . . . Skyco is proud to be accepted as a member of the People 2.0 network [a national group of staffing companies] . . . We at Skyco Staffing Services appreciate your business and support. We look forward to strengthening our relationship and we will continue our efforts to provide you with the very best staffing services possible." Also in 2005, a new document was executed, one that is highly disputed between Dealers and Skyco. The document contained a provision whereby Skyco/People 2.0 would provide workers "under the supervision and direction of [Dealers] in the specific job positions and at the work site(s) designated by [Dealers]." The second page of the document, which contains terms and conditions, features the signature of Skyco/People 2.0 representative Joel Mantooth. The first page of the document features the signature of Lynn Mirts, Dealers' human resource director. Time sheets in the record reflect examples of this relationship, which contain language agreeing to the terms and conditions set out. Dealers has

-2-

disputed that it is bound by the 2005 agreement, suggesting that the first and second pages are unrelated. As for People 2.0, its affiliation with Skyco ended in 2007.

Years later, Skyco provided Gilbert to Dealers for temporary work. Gilbert drove a box truck for Dealers. On February 14, 2014, having completed his duties for Dealers but while still driving Dealers' truck, Gilbert struck a truck driven by Poole on I-75 in Knox County. Poole was injured in the incident. On February 19, 2014, Poole sued Gilbert and Dealers in the Trial Court. Poole later sued Skyco. Dealers brought People 2.0 into the suit via third-party complaint, as well. Poole filed a succession of amended complaints. Poole's third amended complaint, which was operative at trial, made a claim for punitive damages against Dealers for Dealers' alleged failure to comply with certain federal regulations as to keeping records on Gilbert's background.

Attempts to serve Gilbert proved futile. A private process server returned the summons to the clerk on July 21, 2016. In an affidavit, the server stated that he had tried more than twelve times in vain to serve Gilbert at his mother's address, which he had gotten from Gilbert's probation records. The server was advised by the mother that Gilbert was not at home. Dealers' counsel initially entered a notice of appearance for Gilbert but withdrew it. Default judgment thereafter was entered against Gilbert. In short, Gilbert has taken no role in this case.

Skyco and People 2.0 filed motions for summary judgment, which the Trial Court granted. The Trial Court held that, under the terms of the 2002 and 2005 agreements and in light of the "loaned servant" doctrine, Dealers had assumed supervisory control over Gilbert. The Trial Court discussed in its oral ruling attached to its order granting summary judgment as follows:

> [T]his Court finds that there is an unambiguous contract between Skyco and Dealers and, certainly, that contract is unambiguous whether or not you go under the 2002 contract or whether you go under the 2005 contract. Both contracts specifically state that the employees would be acting under the control and supervision of Dealers. That is also then substantiated by the testimony of Dealers' employee Burkhardt, who states how these employees [sic] that Mr. Gilbert was on the business of Dealers at the time of this accident; that he had approval to be operating the truck by Dealers; that, in fact, Dealers placed another one of their own employees in the truck with Mr. Gilbert to be certain that he was competent to operate the truck and that the conclusion was that he was; and then he proceeded to go about driving this truck on the business of Dealers Warehouse. So, as it relates to the question of liability, I think it is a question of law. I think the facts are unambiguous. I think the contractual relationship between Dealers and

Skyco is unambiguous and that liability for the actions of Mr. Gilbert in this accident are on the shoulders of Dealers as the employer -- as the temporary employer who is directing Mr. Gilbert, making him a loaned servant under that line of Adecco, Gaston, and Parker cases. So, as to liability, it is -- for the actions of Mr. Gilbert, it is as to Dealers alone.

***

[I]t seems to me that as we have gone through the evidence, there is certainly a clear course of dealing that People 2.0 and/or Skyco were providing employees who it knew might be operating vehicles because of the information that was being provided. If, in fact, the 2005 agreement is not the relevant agreement, then we would fall back to the 2002 agreement.

***

[I]f the applicable agreement is the 2002 agreement, which was, in fact, signed by Mr. Mirts on behalf of Dealers, that 2002 agreement says that Skyco will provide clients -- provide to Dealers employees and that Dealers says that -- or Dealers would not allow anyone to operate a vehicle unless they were covered by liability insurance. And in this case, clearly the vehicles were covered by liability insurance as established by the proof in the record. And, so, there would not be any violation or breach of that agreement and it would not -- So, it would not be an indemnity provision and/or a breach of contract provision under the 2002 agreement. So, I think that the 2005 agreement is valid. But I think that the facts do not establish that there was a breach of that agreement. And I am going to dismiss the claims for indemnity as to -- and breach of contract as to Skyco against Dealers and -- and grant the motion for Summary Judgment to Dealers that they are not entitled to indemnity from or to provide indemnity to Skyco. I've tried my best to get those names correctly. And when I get the transcript back, I will make sure that I did it correctly. But, in any event, the bottom line is that I'm finding that Skyco is out on the liability issue as to whether they were an employer of Gilbert, but I'm finding that Dealers is not required to -- there's no finding of breach of contract or indemnity under the contract provisions as to between Dealers and Skyco. All right?

***

MR. TAYLOR: And, Your Honor, it sounds to me also that People 2.0, 2.0 is out because --

THE COURT: Well, I'm going to assume that Mr. Taylor is probably not going to insist on pursuing that claim, but I'm going to guess that for the appellate record, he's probably not going to want to waive that claim. So, I probably would formally have to rule that based upon my current findings that Skyco is not liable, that based upon the record as it exists with regard to People 2.0, that I would grant their Motion for Summary Judgment both on the issue of the fact that they were -- even if they were under the terms of the contract, they would not be liable because Dealers would be the principal employer, and then secondarily find that based upon the facts that exist, certainly as it relates to Mr. Gilbert, the relationship as to between People 2.0 Global or I guess it's -- it's People 2.0 Global -- all right -- is a little different than Skyco because even in that case, People 2.0 Global was not even the primary employee -- employer of Mr. Gilbert. So, on both those bases, I would grant your Motion for Summary Judgment.

With Skyco and People 2.0 out, Poole's case against Dealers and Gilbert proceeded. The case was tried in three days before a jury from February 27 through March 1, 2017. The first phase of the trial concerned compensatory damages. The jury returned a verdict for Poole in the amount of $431,508.71, for which both Dealers and Gilbert were liable. The next phase of trial concerned Poole's punitive damages claim against Dealers. Poole's basis for seeking punitive damages from Dealers was that Dealers failed to comply with certain federal regulations as to keeping records on Gilbert's background. The Trial Court directed a verdict in favor of Dealers. In the third phase, the jury returned a verdict for Poole assessing punitive damages against Gilbert in the amount of $250,000. Gilbert, who never appeared in this case, was unrepresented. Critically, Poole's basis for seeking punitive damages against Gilbert had nothing to do with Dealers' conduct as to its record keeping but rather Gilbert's own alleged bad driving.

Seeking to impute the punitive damages assessed against Gilbert to Dealers, Poole filed a motion for joint and several judgment. In response, Dealers relied on Tenn. Code Ann. § 29-39-104(a)(9), which requires a defendant's culpability on punitive damages to be determined separately from an agent's. In September 2017, the Trial Court entered an order denying Poole's motion. The Trial Court stated, in part:

Pretrial matters in this case were complicated by the fact that the truck being operated by Gilbert was a leased vehicle. Additionally, Gilbert was a direct employee of a staffing company who provided Gilbert to the Defendant Dealers Warehouse. There were a multitude of pretrial motions

on the issue of the liability as between the Defendants Dealers Warehouse and Skyco Staffing Services, Inc. as to issues of their contractual agreements as to the status of loaned employees and as to claims of indemnity. Defendant Dealers Warehouse also made similar claims as to People 2.0 Global. Prior to trial, this Court ruled that Gilbert was a loaned servant of Dealers Warehouse and dismissed the claims against Skyco Staffing Services and People 2.0 Global. As a result of these rulings, this Court concluded that by default, Mr. Gilbert, was at fault for this accident and because Gilbert was acting in the course and scope of business for Dealers Warehouse, Dealers Warehouse was responsible for the actions of Gilbert.

***

Evidence of compensatory damages sustained by Mr. Poole for both personal injury and property damage was presented to the jury and the jury returned a total compensatory verdict of $431,508.71.

Since the jury did not award more than the statutory caps for compensatory damages, it was unnecessary to have a phase of the trial dedicated to a determination of whether was intentional destruction or concealment of documents for the purpose of avoiding liability as set forth in Tenn. Code Ann. 29-39-102(h)(2).

The next phase of the trial that was conducted was a trial to determine whether Dealers Warehouse should be liable for punitive damages. In the both the Second and Third Amended Complaint, Plaintiff asserted that Dealers Warehouse should be liable for punitive damages as a result of alleged violations of certain trucking regulations. Plaintiff did not make any argument during this phase of the trial that Dealers Warehouse should be liable under a theory of vicarious liability or put on any [proof] to establish liability for punitive damages under joint and several liability. Further, Plaintiff did not seek any determination of vicarious liability as required under Tenn. Code Ann. 29-39-104(a)(9) or 29-39-104(g)(2). At the conclusion of the evidence, this Court directed a verdict as to the claim for punitive damages as to Dealers Warehouse.

At that point, the Plaintiff requested an opportunity to present evidence of punitive damages as to the defaulted Defendant Derrick Gilbert. The Court was surprised by this request because there had not been a prior indication that there would be a claim for punitive damages

-6-

against the defaulted Defendant. There was no such claim in the Third Amended Complaint which was the last amended complaint filed before the trial in this matter. After looking through the file, the Court found that the complaint that was "of record" at the time of the default against Mr. Gilbert, was the First Amended Complaint (November 20, 2014) which arguably made a request for punitive damages against Mr. Gilbert. On that basis, the Court stated that it would allow a claim for punitive damages against Mr. Gilbert to be presented to the jury. Counsel for Defendant Dealers Warehouse asked if they could participate and the Plaintiff objected to their participation because they did not represent Mr. Gilbert. As such, the Court indicated that counsel for Dealers Warehouse could not participate in this phase of the trial unless they entered an appearance for Mr. Gilbert, which they chose not to do. Limited testimony was presented and the jury was asked to make an award of punitive damages against Mr. Gilbert and they returned a verdict in the amount of $250,000.00. The jury verdict form submitted to the jury specifically identified the punitive damage claim as an award against Derrick Gilbert. At no time, did Plaintiff request a verdict form for punitive damages under Tenn. Code Ann. 29-39-104(g)(1).

Plaintiff has filed a Motion for Joint and Several Liability as to the punitive damage claim entered by the jury against Derrick Gilbert. Plaintiff asserts that under Tennessee law, a principal could be liable for both compensatory and punitive damages for the deliberate acts of its servant. *Memphis St. Ry. Co. v. Stratton*, 131 Tenn. 620, 176 S.W.105 (Tenn. 1915) and also, *Knoxville Traction Co. V. Lane*, 103 Tenn. 376, 53 S.W. 557 (Tenn. 1899).

This Court finds the requirements of Tenn. Code Ann. 29-39-104(a)(1) and 29-39-104(g)(1) to be controlling. The Plaintiff never requested the special verdict form required by this statute before there can be a finding of vicarious liability. Furthermore, the Plaintiff proceeded on a claim of punitive damages against the Defendant Dealer's Warehouse without any request that the Court and/or the jury make a finding of liability on the issue of vicarious liability. Additionally, the Third Amended Complaint, which was the complaint under which the Plaintiff was proceeding at trial against the Defendant, did not assert a claim for punitive damages against the Defendant Dealers Warehouse for vicarious liability nor did it even assert a claim for punitive damages against Derrick Gilbert. As such, the Second and Third Amended Complaint failed to place the Defendant Dealers Warehouse on notice of the claim for punitive

damages under a theory of vicarious liability and failed to even assert any claim for punitive damages against the driver, Derrick Gilbert.

For all the forgoing reasons, the Plaintiff's Motion for A Joint and Several Judgment is Denied.

(Footnote omitted). Dealers filed a motion to alter or amend judgment, a motion for a new trial, and a motion for suggestion of remittitur. The Trial Court denied all of these motions by March 2018 orders. Poole timely appealed to this Court.

## **Discussion**

We restate and consolidate the issues Poole raises on appeal as follows: 1) whether the Trial Court erred in denying Poole's motion for a joint and several judgment; and, 2) whether Federal Motor Carrier Safety Regulations preempt Tenn. Code Ann. § 29-39-104(a)(9) because they intend for joint and several liability between principal and agent. Dealers raises its own issues, which we restate into the following single issue: whether the Trial Court erred in granting Skyco's and People 2.0's motions for summary judgment.

We first address Dealers' issue. As our Supreme Court has instructed regarding appellate review of a trial court's ruling on a motion for summary judgment:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\* \* \*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the

nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

This issue implicates the "loaned servant" doctrine, recognized in Tennessee law. The effect of the loaned servant doctrine is that "[a]n employee of one employer may become the servant of another and shift the liability for his negligent acts to the second

employer." *Parker v. Vanderbilt Univ.*, 767 S.W.2d 412, 416 (Tenn. Ct. App. 1988) (citing *Richardson v. Russom Crane Rental Co.*, 543 S.W.2d 590 (Tenn. Ct. App. 1975)). The Tennessee Supreme Court articulated a test for the loaned servant doctrine in *Gaston v. Sharpe*, 168 S.W.2d 784, 786 (Tenn. 1943), stating:

> [A] servant at a particular time may remain under the control of his general employer for some purposes and yet be under the control of a special employer for others. Likewise it sometimes happens that a particular work in which the servant is engaged may be properly considered as the work or business of both the general employer and the special employer.
>
> The question is difficult. It is considered at some length in Restatement of Agency, § 227. We take the following from Restatement as a satisfactory rule: "Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is as to whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act. This is a question of fact in each case."

In the relatively more recent case, *Parker v. Vanderbilt Univ.*, this Court added a caveat to the *Gaston* Court's analysis by addressing a scenario in which the relationship between the parties is governed by contract:

> As we have discussed above, whether a servant of one employer has become the servant of another is a question of fact. *Gaston v. Sharpe*, 179 Tenn. at 614, 168 S.W.2d at 786. Ordinarily, that determination would be for the jury. However, in this case, the relationship between the two hospitals is governed by a written agreement. The interpretation of an unambiguous written agreement is a question of law for the court. *Merritt v. Nationwide Warehouse Co., Ltd.*, 605 S.W.2d 250, 255 (Tenn. Ct. App. 1980).

*Parker*, 767 S.W.2d at 417.

In the present case, the Trial Court ruled that unambiguous contractual language meant there was no fact question for the jury to resolve, and that, under the terms of both the 2002 and 2005 agreements, Dealers assumed responsibility for supervision and control of the temporary workers it was provided. In response, Dealers contends that the the 2002 and 2005 agreements neither are unambiguous or undisputed. With respect to the former, Dealers points out that Skyco is a new corporation and not merely a renamed Labor Headquarters. With regard to the 2005 agreement, Dealers asserts in its brief that it "was so controversial that the parties could not even agree as to whether it was a single sheet, with writing on two sides, or two separate documents" and "the authenticity of the document was a question of fact, and the jury should decide the validity of the document, whether it was a single or two documents, and whether or not Dealers had actually signed and agreed to the terms on the second page."

A Skyco/People 2.0 representative signed the second page of the disputed 2005 document, but Dealers did not. This Court has discussed whether parties may be bound to a contract where only one party signs:

> It is well established in Tennessee that, in order to be enforceable, a contract must represent mutual assent to its terms, be supported by sufficient consideration, be free from fraud and undue influence, be sufficiently definite, and must not be contrary to public policy. *Johnson v. Central Nat'l Ins. Co.*, 210 Tenn. 24, 356 S.W.2d 277, 281 (1961). Such a contract can be expressed or implied, written or oral. *Id*. A written contract does not have to be signed to be binding on the parties. *See Remco Equip. Sales, Inc. v. Manz*, 952 S.W.2d 437, 439 (Tenn. App. 1997). Similarly, when an agreement is reduced to writing but is signed by only one of the parties, it is binding on the non-signing party if that party has manifested consent to its terms. *Southern Motor Car Co. v. Talliaferro*, 14 Tenn.App. 276, 1931 WL 1595, at *3, (Tenn. Ct. App. March 5, 1932) (*cert. denied*). What is critical is mutual assent to be bound. In determining mutuality of assent, courts use an objective standard based on the manifestations of the parties. 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 30:6 (4th ed.1999). Assent can be established by the course of dealing of the parties. *Remco Equip. Sales*, 952 S.W.2d at 439. In determining whether a contract exists, the court also can consider relevant evidence such as whether the parties performed under its terms. 11 Williston & Lord, § 30:3. When a party who has not signed a contract has nonetheless manifested consent by performing under it and making payments conforming to its terms, that party is estopped from denying that the parties had a meeting of the minds sufficient to bind them to the

-11-

contract. *R.J. Betterton Management Serv., Inc. v. Whittemore*, 769 S.W.2d 214, 216 (Tenn. Ct. App. 1989).

*T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 865-66 (Tenn. Ct. App. 2002).

Here, there was a clear course of dealing for years between Dealers and Skyco. Skyco provided temporary labor to Dealers. From 2005 through 2014, these parties performed under the agreement. Temporary workers did not simply appear spontaneously to work for Dealers. Time sheets entered into the record reflect how Dealers' representatives would sign off on workers. Although Dealers disputes that the 2005 agreement *amounts* to a contract, we regard this as a legal conclusion rather than a genuine issue of material fact. Dealers, having performed under the 2005 agreement, is estopped from denying it is bound by the 2005 agreement on the basis that it allegedly never signed it. Dealers' and Skyco's course of dealing evinces mutual assent to be bound by the 2005 agreement.

With respect to People 2.0, its potential liability is even more attenuated. People 2.0's affiliation with Skyco terminated in 2007, years before the accident of this case. To the extent People 2.0 has any connection to this case, the terms and conditions of the 2005 agreement serve to shield it from liability for Gilbert's conduct, also.

On February 14, 2014, Gilbert was Dealers' responsibility while he was working for them. Despite having completed his duties for Dealers, Gilbert still was driving Dealers' truck. We disagree with Dealers that any material factual issues remain to be decided on that score. We, as did the Trial Court, hold that, pursuant to the unambiguous terms of the 2005 agreement, Dealers exercised sole control and supervision over Gilbert when the accident occurred. No genuine issues of material fact exist to preclude summary judgment. Skyco and People 2.0, having filed properly supported motions for summary judgment, are entitled to judgment as a matter of law and dismissal from this case. We find no error by the Trial Court on this issue.

We next address Poole's issue of whether the Trial Court erred in denying Poole's motion for a joint and several judgment for punitive damages. Punitive damages are "restrict[ed] . . . to cases involving only the most egregious of wrongs." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Punitive damages are fairly limited in their application, and a court may "award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Id*. The standard is clear and convincing evidence. *Id*.

The Trial Court cited Tenn. Code Ann. § 29-39-104(a)(9) in concluding that Poole was not entitled to a joint and several judgment. The statute provides as relevant: "The culpability of a defendant for punitive damages whose liability is alleged to be vicarious shall be determined separately from that of any alleged agent, employee or representative." Tenn. Code Ann. § 29-39-104(a)(9)(Supp. 2018). The statute further states:

(g)(1) Notwithstanding subdivision (a)(9), punitive damages may be awarded against a defendant based on vicarious liability for the acts or omissions of an agent or employee only if the finder of fact determines by special verdict based on clear and convincing evidence that one or more of the following has occurred:

(A) The act or omission was committed by a person employed in a management capacity while that person was acting within the scope of employment;

(B) The defendant was reckless in hiring, retaining, supervising or training the agent or employee and that recklessness was the proximate cause of the act or omission that caused the loss or injury; or

(C) The defendant authorized, ratified or approved the act or omission with knowledge or conscious or reckless disregard that the act or omission may result in the loss or injury.

(2) Nothing in this subsection (g) shall be construed to expand or increase the scope of vicarious liability or punitive damages liability under Tennessee law.

(3) For purposes of this subsection (g), "a person employed in a management capacity" means an employee with authority to set policy and exercise control, discretion, and independent judgment over a significant scope of the employer's business.

Tenn. Code Ann. § 29-39-104(g)(Supp. 2018).

Poole contends that nothing in this statute precludes holding Dealers vicariously liable for an award of punitive damages assessed against Gilbert. We disagree, as none of the actions specified in (g)(1) allowing vicarious liability were proven. Alternatively, Poole argues in his brief that Federal Motor Carrier Safety Regulations, 49 C.F.R. §§ 350 to 399, preempt Tenn. Code Ann. § 29-39-104 to the extent they conflict, and states that

-13-

"federal courts interpreting the FMCSRs and their effect on the liabilities of parties have acknowledged that an employer/motor carrier retains liability for the accidents of its employees/agents."

For its part, Dealers argues on Gilbert's behalf that he was not served properly and that the punitive damage award assessed against him should be declared void. Dealers does not represent Gilbert, so a question of standing arises. Dealers submits that it has a financial interest in defending Gilbert so as to protect itself from the punitive damages assessed against him.

It is instructive to reiterate how this case was tried. In the phase of this case concerning punitive damages against Dealers, Poole argued that Dealers was liable because it failed to adhere to federal regulations in keeping up a driver qualification file on Gilbert. The Trial Court directed a verdict in favor of Dealers, and that directed verdict is not an issue before us. In a separate phase of trial, Poole put to the jury that Gilbert should be assessed punitive damages on account of his driving. Gilbert was not there to defend himself, nor was Dealers allowed to argue on his behalf.

We have carefully reviewed the record and find that Poole's basis for seeking punitive damages from Gilbert under the Amended Complaint in effect at trial was entirely different from his basis for seeking punitive damages from Dealers. In the former case, Poole pressed Gilbert's driving. In the latter, he relied on Dealers' alleged failure to adhere to federal regulations. We believe this distinction matters. Simply put, Poole did not sue Dealers for punitive damages based on vicarious liability.

That Dealers is vicariously liable for compensatory damages as Gilbert's temporary employer for his tortious conduct while working for it is clear, but punitive damages have a different rationale. Punitive damages are designed to punish a wrongdoer and deter similar misconduct. We do not hold, as Dealers suggests Poole is maintaining, that punitive damages cannot be imputed to a principal for the conduct of an agent under a vicarious liability theory. We do hold, however, that the principal's conduct must necessarily relate to the agent's conduct in order for punitive damages to be imputed. There must be a degree of fault on the part of the principal as reflected in Tenn. Code Ann. § 29-39-104(g).

The jury in this case was presented with two separate arguments in two separate phases of trial. The jury never reached a decision regarding Dealers' liability for punitive damages because the Trial Court directed a verdict in favor of Dealers. In that phase, the issue was Dealers' alleged failure to adhere to federal regulations. In the subsequent phase against Gilbert for punitive damages, the basis for Poole's claim was based entirely on Gilbert's driving that day. To grant a joint and several judgment for Poole against

-14-

Dealers would wrongly punish and deter Dealers for conduct it was not even purported to have engaged in. Further, Dealers' counsel requested to be allowed to participate in defending Gilbert as to Poole's claim against him for punitive damages. Poole objected to that participation and the Trial Court did what Poole requested. Dealers may not be punished for reasons as to it that were never alleged or put to the jury and where it was not even permitted to defend itself at Poole's insistence. We affirm the Trial Court in its denying Poole's motion for a joint and several judgment.

The final issue we address is whether Federal Motor Carrier Safety Regulations preempt Tenn. Code Ann. § 29-39-104(a)(9) because they intend for joint and several liability between principal and agent. The State of Tennessee filed a brief arguing that Poole waived this issue by failing to raise it below and, alternatively, should we address the issue, that the federal regulations do not preempt our law on punitive damages. The State is correct that Poole failed to raise this issue below. Indeed, Poole did not even allege vicarious liability against Dealers in its operative complaint at trial, seeking punitive damages under another approach as discussed above. Dealers raised Tenn. Code Ann. § 29-39-104 as soon as Poole sought a joint and several judgment after trial—in other words, as soon as the question presented itself. Poole, on the other hand, never invoked preemption below. Nevertheless, we believe this issue warrants resolution.

The Federal Motor Carrier Safety Regulations serve to establish a minimum baseline of safety standards for commercial motor vehicles. Poole cites to various cases standing for the proposition that a motor carrier may not evade liability for the negligence of its employees. The Court of Appeals of Indiana stated, for instance, that "[t]he FMCSR promote public safety by insuring that motor carriers with operating authority are unable to delegate or evade responsibility by means of a contractual device . . . a DOT-authorized motor carrier will be held liable for the negligence of its 'employee' as that term is defined in 49 C.F.R. § 390.5 . . . ." *Illinois Bulk Carrier, Inc. v. Jackson*, 908 N.E.2d 248, 255 (Ind. Ct. App. 2009). This, however, is not exactly what is being disputed in this appeal.

We are confronted with a very specific question about when and how punitive damages may be assessed against a principal for the conduct of an agent in the context of a state law, Tenn. Code Ann. § 29-39-104. Poole cites to no regulation showing a conflict with Tennessee law on punitive damages. The United States District Court for the Eastern District of Oklahoma has stated that "no private right of action exists under the Federal Motor Carrier Safety Regulations which could preempt any state rule of law . . . ." *Mason v. Dunn*, No. CIV-14-282-KEW, 2015 WL 5690746, at *3 (E.D. Okla. Sept. 28, 2015). Likewise, the Supreme Court of Alabama has stated: "We cannot conclude that the Federal Motor Carrier Safety Act reflects the requisite 'clear and manifest purpose of Congress' to preempt the 'historic police powers of the states' in establishing

standards for tort liability among their citizens." *Dixon v. Hot Shot Express, Inc.*, 44 So.3d 1082, 1090 (Ala. 2010)(quoting from *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). We are unconvinced that Tenn. Code Ann. § 29-39-104, in governing the manner in which punitive damages are assessed between principal and agent, conflicts in any way with federal law or regulations such that it is preempted. The statute does not, at any rate, serve to insulate a principal from liability arising from the misconduct of its agent and thus undermine the intent of federal safety regulations. It merely defines the conditions under which punitive damages may be assessed. This issue is without merit.

Our holding pretermits Dealers' issue attacking service of process to Gilbert and the award of punitive damages against him. As we have explained, Dealers is not liable for punitive damages assessed against Gilbert, and they have no interest in arguing on his behalf. Dealers, therefore, lacks standing to make any arguments on behalf of Gilbert. We affirm the judgment of the Trial Court in its entirety.

## <u>Conclusion</u>

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Charles Edward Poole, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE